THE CONTINENTAL INSURANCE COMPANY *v.*
CONNECTICUT NATURAL GAS CORPORATION

THE CONTINENTAL INSURANCE COMPANY *v.*
AIRCO, INC.
(2649)
(2661)

DUPONT, C. J., SPALLONE and DALY, Js.

Argued April 9—decision released August 20, 1985

*James A. Wade,* with whom, on the brief, was *Thomas A. Young,* for the appellant-appellee (defendant in the first case).

*Joel J. Rottner,* for the appellee-appellant in the first case, appellant in the second case (plaintiff in both cases).

*George J. Markley,* for the appellee (defendant in the second case).

SPALLONE, J. These are combined appeals. In *Continental Ins. Co.* v. *Connecticut Natural Gas Corporation,* the defendant, Connecticut Natural Gas Corporation (CNG), is appealing from a judgment rendered in favor of the plaintiff, The Continental Insurance Company (Continental). In that case, the trial court found that Continental was entitled to reimbursement of funds paid to CNG under a contract of insurance after CNG received an arbitration award allegedly covering the same loss. Continental has cross appealed as to the amount of interest awarded on that judgment. In the second case, *Continental Ins. Co.* v. *Airco, Inc.,* which was a subrogation action, Continental appeals from a judgment in favor of Airco, Inc. (Airco).

The facts pertinent to both cases are as follows. On November 4, 1970, CNG entered into a contract with Airco wherein Airco agreed to construct a liquified natural gas plant according to certain design specifications. Airco incorporated a 1202 Turbine and Elliot Compressor into the structure as the plant's main power source. On September 30, 1973, slightly over a year after the plant was built, the turbine exploded. At the time of the explosion, CNG was insured by Oil Insurance

Association and Continental. Oil Insurance Association paid CNG $9834.67 for fire loss. Continental paid CNG $260,165.40 for damage to the turbine. In exchange for that payment, CNG gave Continental a subrogation receipt, by which CNG acknowledged receiving the amount paid "in full settlement of [its] claims and demands . . . for loss and damage by machine accident" and subrogated Continental "to all the rights, claims and interest which [it] may have against any person or corporation liable for the loss . . . ."

In May, 1975, Continental commenced the subrogation action, *Continental Ins. Co.* v. *Airco, Inc.,* to recover the amount it had paid to CNG for the damage to the turbine. Two weeks after that action was instituted, CNG applied to the Superior Court for an order to show cause why Airco should not be ordered to arbitrate with CNG concerning the controversies between them in accordance with the provisions of their contract. Continental's subrogation action against Airco was subsequently stayed by stipulation of the parties, pending completion of the arbitration proceedings. On December 21, 1977, the arbitrators awarded CNG $526,492, which Airco paid in full. Continental thereafter initiated the action against CNG for reimbursement of the amount which it had paid CNG under its policy of insurance, contending that its subrogated claim against Airco was included in the award.

*Continental Ins. Co.* v. *Connecticut Natural Gas Corporation* and *Continental Ins. Co.* v. *Airco, Inc.,* the latter having been released from the stay, were consolidated and tried together. In the first case, the trial court concluded that the payment of $260,165.40 by Continental to CNG was included in the arbitration award. After deducting $48,000 for arbitration expenses, the court rendered judgment for Continental in the amount of $212,165.40, plus interest from February 3, 1978, the date CNG was paid by Airco. In

*Continental Ins. Co.* v. *Airco, Inc.*, the trial court rendered judgment for Airco, on the ground that the arbitration between CNG and Airco was res judicata as to Airco's liability.

I

*CONTINENTAL INS. CO.* v. *CONNECTICUT NATURAL GAS CORPORATION*

A

CNG's central argument on appeal is that the court erred in concluding that Continental was entitled to a portion of the arbitration award because the award was not intended to compensate for any loss covered under its policy with Continental. It contends that the award compensated only for losses arising from Airco's failure to meet the contract specifications for the construction of the liquified gas plant and not for loss due to the "machine accident." We see no merit in this claim.

In reviewing an arbitration award, the award itself rather than the accompanying memorandum of the arbitrators controls. Ordinarily, their memorandum is irrelevant except as it may be referred to in determining whether the award exceeds the scope of the submission. *Waterbury Construction Co.* v. *Board of Education,* 189 Conn. 560, 563, 457 A.2d 310 (1983). The propriety of the award has not been challenged in any respect, and we, therefore, assume that it conformed to the submission. See *Naugatuck* v. *AFSCME,* 190 Conn. 323, 325, 460 A.2d 1285 (1983).

Since arbitration is a creature of contract, the parties themselves, by their submission, define the power of the arbitrators; *Malecki* v. *Burnham,* 181 Conn. 211, 212–13, 435 A.2d 13 (1980); and delineate the issues to be decided. *Board of Education* v. *AFSCME,* 195 Conn. 266, 271, 487 A.2d 553 (1985). An arbitration award is thus interpreted in terms of the agreement

of submission. *American Brass Co.* v. *Torrington Brass Workers Union,* 141 Conn. 514, 521, 107 A.2d 255 (1954). We consequently must examine the language of the submission and the intent of the parties expressed therein to determine the coverage of the award. In this case, the language is unambiguous.

The submission provided as follows: "1. On September 30, 1973, a failure occurred in the Nordberg Gas Turbine extensively damaging it and the Elliott Compressor attached thereto as well as the stack and heat exchangers, as a result of which CNG was required to expend substantial sums to repair the compressor and dismantle the Turbine.

"2. The Nordberg Turbine known as Model G55 (equivalent of HS 1202) specified by Airco could not meet performance requirements as it was of inadequate size for it but purchased a larger HS Model 1203 from the manufacturer at a cost of $625,000 less $100,000 credit for the damaged Model 1202 net cost being $525,000.

"3. The damages incurred by CNG as a result of 1 and 2 above are:

| | |
|---|---:|
| Replacement of 1202 with 1203 Turbine | $526,492 |
| Vendor labor purchased | 67,087 |
| Vendor material purchased | 1,736 |
| CNG labor | 3,768 |
| CNG material purchased | 1,736 |
| Consultant fees - J.A. Klapper | 45,896 |
| | $646,715" |

The submission thus presented two claims, one for the failure which occurred when the turbine exploded on September 30, 1973, and the other for the inadequacy of the turbine in terms of the contract specifications. For both of these claims, CNG sought damages of

$646,715, of which $526,492 related to replacement of the turbine. The arbitrators awarded CNG exactly $526,492.

The record, furthermore, reveals that at the outset of the arbitration proceedings, CNG's attorney specifically stated that he included in his claim the monies he had received from CNG's insurers: "In bringing our arbitration proceeding, I included the entire loss. In that loss, there is, of course, the $270,000 [sic] which we have been paid. I certainly don't want to be paid twice." The arbitrators indicated their understanding that this amount was included in CNG's claim. In a memorandum setting forth the grounds of their decision, they stated that "[t]he award . . . has not been reduced by the amount of $260,165.40 paid by Continental to CNG." The arbitrators also stated in their memorandum that "they make no decision as to whether or not CNG is obligated upon payment of the award herein to reimburse Continental $260,165.40, reduced by CNG's expenses herein or any portion thereof." As noted by the trial court, if, in fact, the award had not included the sum of $260,165.40 paid by Continental to CNG, there would have been no need for the arbitrators to even mention reimbursement by CNG to Continental or contribution of CNG's arbitration expenses.

Any ambiguity in an agreement must flow from the language used and not from one party's subjective perception of the terms. *Reese* v. *First Connecticut Small Business Investment Co.,* 182 Conn. 326, 327, 438 A.2d 99 (1980). Where there is no ambiguity, we will not indulge in construction. See *Zullo* v. *Smith,* 179 Conn. 596, 601, 427 A.2d 409 (1980). Having reviewed the language of the submission, which is unambiguous in its expression of the parties' intent, and the facts as they are reflected in the record before us, we conclude

that the trial court's finding that the award of $526,492 included the $260,165.40 paid to CNG by Continental was reasonable.

## B

CNG's remaining claim of error, that Continental was not entitled to be reimbursed from the arbitration award, is premised upon the assumption that the award did not include any amount received from Continental. Having determined that the trial court was correct in finding that this amount was included in the award, we conclude that there is no error in the trial court's determination that reimbursement was warranted.

The principle that an insurer which has paid a claim for property destroyed through the fault of a third person may, in certain circumstances, be reimbursed out of the funds received by the insured in satisfaction of his claim against the third person, is generally recognized. 44 Am. Jur. 2d, Insurance § 1841. There are several theories upon which an insurer may recover such payments. The first is that the insured, by releasing the wrongdoer from liability, breached an express contract with the insurer, whether that contract be the original policy or a collateral agreement executed when the insurer paid the policy claim; the second is that the release or settlement gave rise to an implied promise to reimburse the insurer; and the third is based on equity. Id., § 1842.

In this case, when CNG received the subrogation receipt from Continental, it recognized Continental's right to be subrogated to the amount paid. The resolution of the dispute between CNG and Airco through arbitration, however, effectively compromised any claim Continental had under the subrogation receipt. To permit CNG to retain the payment would, as the trial court found, result in CNG's unjust enrichment.

## C

In its cross appeal, Continental claims that the trial court erred in awarding interest only from February 3, 1978. It argues that interest should have been awarded from December 6, 1974, the date it paid CNG. There is no merit to this claim. No debt was owed Continental by CNG prior to the arbitration award and the payment by Airco to CNG pursuant to that award.

Interest ordinarily begins to run from the time when money is due and payable. *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 274, 287 A.2d 374 (1971). "The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134 (1906). The underlying issue is whether, under the circumstances, the detention of the money is not wrongful. *Cecio Bros., Inc.* v. *Feldmann,* supra, 275; *Vernon Foodliner, Inc.* v. *Central Mutual Ins. Co.,* 1 Conn. App. 595, 599, 474 A.2d 468 (1984). As between Continental and CNG, no money was due and payable to Continental prior to February 3, 1978. We conclude that the trial court did not err in its award of interest.

## II

### CONTINENTAL INS. CO. v. AIRCO, INC.

Our holding in *Continental Ins. Co.* v. *Connecticut Natural Gas Corporation* effectively disposes of this appeal. Because Continental prevailed in its suit against CNG, it is precluded from pursuing its claim against Airco as subrogee of CNG. A subrogee has no rights against a third person beyond what the subrogor had. *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn. 298, 305, 84 A.2d 267 (1951).

Here, by virtue of the judgment in the first case, Continental's claim as subrogee has been satisfied. The trial court correctly concluded that judgment for the defendant was warranted.

There is no error.

In this opinion the other judges concurred.