Sandra **SARGEANT**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION 478 HEALTH BENEFITS AND INSURANCE FUND.**

**Civ. No. H–89–457 (PCD).**

United States District Court, D. Connecticut.

Sept. 17, 1990.

Ross T. Lessack, Edward T. Dodd, Jr., Waterbury, Conn., for plaintiff.

Norman Zolot, New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### I. *Facts and Procedural History*

On February 29, 1984, plaintiff, spouse of Richard Sargeant, a member of the defendant's health benefit plan (the "Fund"), received injuries as a result of a slip and fall at a Burger King. Plaintiff's Statement of the Facts, ¶ 1; Defendant's Statement of the Facts, ¶ 8. The Fund, a self-insured plan subject to federal regulation in accordance with 29 U.S.C. § 1001, *et seq.* (Employee Retirement Income Security Act ("ERISA")), paid a total of $31,067.82 for the plaintiff's medical, surgical, hospital, and related expenses. Defendant's Statement, ¶ 16; McParland Affidavit, ¶ 4.[1] The Fund's rules provide that it "is not liable for any health expenses caused by the negligence of third parties," but that it would pay such expenses provided that the member or dependent sign the Fund's Reimbursement Agreement. Plaintiff's Exhibit K; Defendant's Statement, ¶ 7.

On August 11, 1986, plaintiff executed a reimbursement agreement pursuant to the terms of the Fund. The agreement provided that, if the Fund provides benefits as a result of the February 29, 1984 accident, which are later determined to be the legal responsibility of a third party, it shall have the right to "recover the full cost of such benefits from me without any deductions of any type, including attorney fees."[2] Plaintiff's Exhibit J; Defendant's Statement, ¶ 13. Plaintiff sued Burger King and its parent, Pillsbury Corp., alleging negligence on the part of Burger King. Plaintiff's Statement, ¶ 1; Defendant's Statement, ¶ 11. Plaintiff settled that civil action for $175,000. Plaintiff's Statement, ¶ 2; Defendant's Statement, ¶ 18. Defendant asserts that plaintiff then agreed to pay the $31,076.82 claimed by the defen-

dant, Defendant's Statement, ¶ 25 and Exhibit B–1; but when the Fund informed plaintiff that it would not pay any future expenses related to the injuries as to which settlement was reached, plaintiff refused to pay the $31,076.82. Defendant's Statement, ¶ 26–27. Plaintiff claims that the Fund does not have a right to be reimbursed and seeks a declaratory judgment that the Fund be denied some or all reimbursement out of the settlement sum. Plaintiff also seeks a declaration that the Fund is liable for future medical expenses related to the fall injuries. The Fund has counterclaimed for reimbursement and costs of collection.

### II. *Standard of Review*

Summary judgment motions must be resolved in accordance with Fed.R.Civ.P. 56(c), which provides, in part, that summary judgment shall be rendered only when "there is no genuine issue as to any material fact." In deciding a motion for summary judgment, "the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). However, "the mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). "Properly used, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57–58 (2d Cir.1987).

### III. *Applicable Law*

#### A. ERISA Preemption

Plaintiff urges application of state law in the resolution of her motion and argues

---

1. Plaintiff asserts that the claim of the Fund was initially $31,076.82 for bills related to the injuries sustained as a result of the fall in issue, but that this claim was later reduced to $30,963.82. Plaintiff's Statement, ¶ 5. However, plaintiff has offered no evidence in support of this assertion or in contradiction of the assertion in the

affidavit of McParland, the Fund Administrator, of payments of $31,067.82. McParland Affidavit, ¶ 4.

2. The agreement also notes that failure to reimburse the Fund may jeopardize future benefits. Plaintiff's Exhibit J.

that any amount the Fund should receive out of the settlement proceeds should be based on equitable considerations. Plaintiff's Memorandum at 2–3. Plaintiff asserts that she settled her claims against Burger King for "less than 50% of the full value of the case so [she] was not made whole by the settlement." *Id.* at 2. Plaintiff argues that the Fund should accept fifty cents on the dollar for its claim for reimbursement and deduct one-half of the costs, plus one-third of the fees claimed as costs of collection.

The Fund contends that, as an employee welfare benefit plan, state law is preempted by federal law and the resolution should be governed by ERISA. Defendant's Memorandum at 13. The "Health Benefits and Insurance Plan for Active Members" is an employee welfare benefit plan as defined by ERISA, 29 U.S.C. § 1002(1), and is also covered by ERISA's governing provisions, 29 U.S.C. § 1003(a). Section 1144(a), 29 U.S.C., provides that "the provisions of [ERISA] shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." This provision is qualified by two exceptions which may exempt a state law from preemption. 29 U.S.C. §§ 1144(b)(2)(A)–(B). The issue is whether state law, statutory or common, governing subrogation rights of an employee welfare benefit plan, is preempted or is excepted from preemption. However, there is no need to decide the preemption question.[3]

Absent preemption, state law would govern. And, even if preemption applies, for the reasons noted below, federal common law would apply state law. Thus, in either instance, state law would govern.

### B. Adoption of State Law as Federal Common Law

■ Assuming that ERISA preempts state law, a federal common law remedy is necessary, because ERISA does not provide an explicit remedy for this subrogation-rights dispute. A "federal common law of rights and obligations under ERISA-regulated plans" must be developed for issues not directly addressed by ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1986); *see also, Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Franchise Tax Bd v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983) (" 'a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans,' " quoting 129 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)).

■ In developing a remedy, federal courts may look to state law and may even "adopt" state law as the appropriate principle. *See United States v. Yazell*, 382 U.S. 341, 358, 86 S.Ct. 500, 510, 15 L.Ed.2d 404 (1966). "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.' " *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979), quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947). "[W]hen there is little need for a nationally uniform body of law, state law may be incorporated as the

---

**3.** If ERISA preempts any state law related to this plan, the questions are whether subrogation laws are "saved" from preemption (§ 1144(b)(2)(A), and, if so "saved," whether the "deemer" clause precludes such "saving" (§ 1144(b)(2)(B). It is generally accepted that subrogation laws are saved from preemption. *See, e.g., United Food & Commercial Workers v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir.1986). However, there is considerable debate over whether self-insured plans are or are not covered by the "deemer clause," which would preclude the application of the "savings clause" to a self-insured plan. *See, e.g., Pacyga*, 801 F.2d at 1162. *But see, e.g., FMC Corp. v. Holliday*, 885 F.2d 79, 89–90 (3d Cir.1989), *cert. granted,* ——— U.S. ———, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990). The issue is currently awaiting resolution by the Supreme Court (*FMC Corp. v. Holliday*), but, as noted in the text, is not determinative of the matter at hand.

federal rule of decision." *Id.* ERISA, designed primarily to provide for secure pension payments to participants, *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984), does not necessitate national uniformity in non-core ERISA matters such as subrogation rights. "Apart from considerations of uniformity, we must also determine whether application of state law would frustrate specific objectives of the federal program[ ].... Finally, our choice of law inquiry must consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Kimbell,* 440 U.S. at 728–29, 99 S.Ct. at 1458–59. The adoption of state law in this area would not undermine or threaten the primary regulatory aim of ERISA. In addition, the adoption of an alternative to state law would result in a potential in-state inconsistency in subrogation rights under ERISA-regulated plans. Those that are self-insured would be subject to a federal common law rule different than the state law, while insured plans would still be subject to indirect state regulation and, therefore, the state law.[4] The potential incongruity of subrogation rights within one state may adversely impact on commercial relationships under state law. Such an incongruity may affect the choice of an employer to establish or not establish an employee welfare benefit plan. These foreseeable re-sults may ultimately disrupt ERISA's specific goals of secure employee retirement welfare. *See Wahl v. Northern Telecom, Inc.,* 726 F.Supp. 235, 242 n. 4 (E.D.Wis. 1989) (concluding that federal common law should adopt state law in the subrogation rights field for reasons of in-state consistency). With no overriding federal concern involved, and given the potential adverse impact on ERISA-regulated plans which an alternative rule would entail, state law pertaining to subrogation rights will be adopted as the federal common law.[5] *Wahl,* 726 F.Supp. at 242 n. 4 ("federal common law should state that a self-insured plan can have no greater rights to subrogation against an insured than provided by state law").

## IV. *Analysis*

Whether applied directly or by adoption as federal common law, the state law is the same and dictates the same result.

### A. Subrogation Claim

■■■ Connecticut law governing subrogation rights, involving a personal injury action, is grounded in contract and equity and allows recovery of the benefactor's amounts paid.[6] "The proposition is well established that an insurer's right to subrogation ... includes a claim against any judgment secured by the insured against the party at fault for the amount paid by

---

**4.** *See* note 2, *supra.*

**5.** This decision also avoids entering into the uncertain ground of a broad federal common law "unjust enrichment" doctrine. *See generally Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990) (reviewing the current status of unjust enrichment law in the several circuits, noting "[l]ike many issues that involve ERISA, the federal courts are divided over the creation of a federal common law of unjust enrichment"). This reinforces adoption of state law as the more uniform and consistent approach.

**6.** Connecticut Gen.Stat. § 52–225c, which generally bars a benefactor's recovery from the beneficiary of collateral source benefits provided to the beneficiary when the beneficiary receives compensation from a third party, does not govern the resolution of this issue. An act "takes effect from its passage. A statute affecting substantive rights is intended to apply prospectively only." *Hydro Air of Connecticut, Inc. v. Versa Technologies,* 599 F.Supp. 1119, 1123 (D.Conn. 1984), citing *Nagle v. Wood,* 178 Conn. 180, 187, 423 A.2d 875 (1979) ("[T]here is a general presumption that a statute affecting substantive rights is intended to apply prospectively only."). Common law causes of action are such vested substantive rights. *Massa v. Nastri,* 125 Conn. 144, 147, 3 A.2d 839 (1939). Section 52–225c became law on October 1, 1987 (Public Act 87–227 s. 6, "1987 Tort Reform Act"), and specifically applies only to contracts "issued, reissued or renewed on or after October 1, 1986." Conn. Gen.Stat. § 52–225c (1989). The plan terms in effect at the time of the initial claim and acceptance of benefits were adopted in 1982; in addition, the repayment agreement was signed on August 11, 1986. The statute by its very terms does not apply and, in the absence of any other relevant law, common law governs.

the insurer in satisfaction of the insured's damages claim under the policy." *Automobile Ins. Co. v. Conlon*, 153 Conn. 415, 419, 216 A.2d 828 (1966). This benefactor's right to recovery against the beneficiary has been recognized in contract, based on the terms of the agreement, *see Bongaret v. Lampasona*, 29 Conn.Sup. 243, 244–45, 282 A.2d 580 (1971), and in equity, based on theories prohibiting unjust enrichment, *see Hartford Accident & Indem. Co. v. Chung*, 37 Conn.Sup. 587, 594, 429 A.2d 158 (1981).

■ Given the uncontested facts in this case the law requires plaintiff to reimburse the Fund. Under a contract theory, plaintiff accepted benefits from the Fund under the terms of the plan, which condition benefits on repayment. In addition, plaintiff signed a reimbursement agreement which expressly provides for the Fund's right to reimbursement. Plaintiff does not challenge the validity of these provisions, but instead argues that equitable principles should bar recovery or reduce the amount recoverable. Plaintiff's Memorandum in Support of Summary Judgment at 4–5. Acknowledging that no Connecticut case law supports her theory, plaintiff relies on the reasoning in *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983), to support the proposition that the defendant's right to full recovery is precluded. The common law principles which guided the *Westendorf* court to its conclusions do not hold in this case. In Connecticut courts, an insurer which has paid a claim for which a third person has been held responsible can seek reimbursement out of the funds received by the insured in satisfaction of his/her claim against the third person and no cases have qualified such rights. *See, e.g., Berlinski v. Ovellette*, 164 Conn. 482, 489, 325 A.2d 239 (1973); *Continental Ins. Co. v. Connecticut Natural Gas Corp.*, 5 Conn. App. 53, 59, 497 A.2d 54 (1985). "Where rights, duties and obligations are fully stated in a written contract between the parties ... [i]t is not within the power of the court to make a new and different agreement." *On Site Energy Corp. v. Sperry Rand Corp.*, 5 Conn.App. 326, 330, 498 A.2d 121 *certif. denied*, 197 Conn. 818, 501 A.2d 388 (1985).

The Fund may also base its claim of reimbursement on the theory of unjust enrichment. Plaintiff, after receiving benefits from the Fund, settled with the third party claimed to be responsible for her injuries and received the settlement money in consideration for the release of all claims, for "any and all known and unknown personal injuries," against the third party. *See Waller*, 906 F.2d 985 (inequitable to allow an insured to receive a double recovery when she knew that the plan contained a reimbursement provision and conditioned advanced payment on signing a reimbursement agreement). The party seeking reimbursement must prove that the amount sought for reimbursement was included in the settlement obtained by the beneficiary. *See Conlon*, 153 Conn. at 420, 216 A.2d 828; *Connecticut Natural Gas Corp.*, 5 Conn.App. 53, 497 A.2d 54. Here it is undisputed that the Fund has paid health expenses for plaintiff in the amount of $31,067.82 in connection with her February 1984 accident, that she claimed that the negligence of Burger King caused her injuries which necessitated the medical expenses paid for by the Fund, and that, in exchange for $175,000, she released Burger King from all claims for any and "all known and unknown personal injuries" resulting from an accident which occurred on February 29, 1984. Accordingly, based on both contractual and equitable grounds, plaintiff must reimburse the Fund $31,076.82, representing the amount paid for medical expenses resulting from February 29, 1984 accident.

**B. Liability for Future Medical Expenses**

■ The governing law also dictates that the Fund is not liable for future payments. This determination rests on the interpretation of the plan's provisions. The Supreme Court has held that a court's review of a trustee's or administrator's interpretation of a plan's provisions must be conducted *de novo*, "*unless* the benefit plan gives the administrator or fiduciary discretionary au-

thority to ... construe the terms of the plan." *Bruch*, 109 S.Ct. at 956 (emphasis added). In such a case, a deferential standard of review is to be applied. *Id.* "The question for the court [is] whether the decision 'was made rationally and in good faith—not whether it was right.' " *Bartucca v. Katy Indus., Inc.*, Civil No. N–87–133, 1989 WL 225617 (D.Conn. Jul. 12, 1989), Ruling on Cross–Motions for Summary Judgment at 4–5, quoting *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2d Cir.1977).

 The terms of the plan provide that "[o]nly the Trustees of the Fund have the authority to determine ... the interpretation and application of Rules and Regulations." International Union of Operating Engineers Local 478, A–C–D–E, Health Benefits and Insurance Plan for Active Members (inside cover). The rule governing reimbursement provides that "[t]he Fund is not liable for *any* health expenses caused by the negligence of third parties." Plaintiff's Exhibit K; Defendant's Statement, ¶ 7 (emphasis added). The administrators have interpreted this provision to exclude benefits for post-settlement medical expenses which arise in the future. Deposition of Wayne Gyenizs at 9; Deposition of James McParland at 9–10. Though the plaintiff contends that this is an "arbitrary and capricious" interpretation of the provision, Plaintiff's Memorandum in Opposition at 2, there is no evidence or indication that the Fund's determination was, under a deferential review, anything other than rationally made in good faith. It is reasonable to expect that exclusion of liability for medical expenses includes the exclusion of future, as well as past or present, liability. This interpretation will, therefore, not be overturned by this court. Plaintiff is not, as a matter of law, entitled to compensation for future medical expenses related to the injuries sustained by plaintiff in the February 29, 1984 fall. Having received compensation from the third party which allegedly caused the fall and resulting injuries, it is not improper for the Fund to consider such compensation to have included future medical expense likely to follow from the fall and thus consider the plan to be without obligation to pay for expenses covered by the settlement.

This decision does not accommodate plaintiff's claim that she compromised her claim against the tortfeasor due to the uncertainty of recovery on a disputed claim of liability. However, the Fund plan makes no provision for a corresponding compromise by the Fund.

### C. Plaintiff's Liability for Collection Costs

 The plan provides, in relevant part, that "[i]f it should be necessary for the Fund to institute legal action against the member or dependent who shall fail to repay the Fund as required by this paragraph or honor the equitable interest in any amount recovered by the member or dependent from any other party, the member or his dependent shall be liable for all costs of collection, including reasonable attorney's fees." Plaintiff's Exhibit K. Plaintiff contends that the Fund is not entitled to fees because it did not "institute" legal action but that she filed a declaratory judgment action and agreed to place the disputed amount in escrow pending resolution. She asserts that, because of the legitimate dispute, the Fund should not be allowed interest and, if it is allowed, that it be limited to the amount that has accrued while the funds have been held in escrow in an interest bearing account at 6% interest since October of 1989.

Although the Fund did not initiate this action, it did assert counterclaims for reimbursement and thus "instituted legal action" within the meaning of the plan's reimbursement provision. Accordingly, in view of the fact that the Fund has been found to be entitled to reimbursement, plaintiff is also liable for the Fund's costs of collection, including reasonable attorney's fees. Interest shall, however, be recovered by the Fund only in the amount of 8% of its claim, since plaintiff received the settlement, October 1989.

### V. *Conclusion*

Plaintiff's motion for summary judgment is denied. Defendant's cross-motion is

**248**

granted as to liability on its four counterclaims. Defendant shall file a proposed form of judgment, on or before September 24, 1990, which sets forth its claim for reimbursement, costs of collection, and interest, along with supporting documentation. Plaintiff shall file any comments on the proposal on or before October 5, 1990.

SO ORDERED.