## UTICA MUTUAL INSURANCE COMPANY

v.

## DENWAT CORPORATION, Minwax Company, Inc.

Civ. No. 2:91–135 (TEC).

United States District Court, D. Connecticut.

Oct. 7, 1991.

John E. Tener, Charles D. Gill, Robinson & Cole, Hartford, Conn., for plaintiff Utica Mut. Ins. Co.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, Conn., for defendant Denwat Corp.

James H. Rotondo, Day, Berry & Howard, Hartford, Conn., for defendant Minwax Co., Inc.

---

RULING ON MOTION TO DISMISS

CLARIE, Senior District Judge.

The plaintiff, Utica Mutual Insurance Company ("Utica") brings this subrogation action against Denwat Corporation ("Denwat") and Minwax Company, Inc. ("Minwax") after satisfying a claim by its insured, Marlborough Country Barn ("Country Barn") for losses suffered as a result of a fire allegedly caused by a product manufactured and distributed by the named defendants. More specifically, Utica has asserted claims under the Connecticut Product Liability Act ("PLA"), General Statutes § 52–572m *et seq.*, the Uniform Commercial Code ("UCC"), General Statutes §§ 42a–2–313 *et seq.*, 42a–2–714, 42a–2–715, and under the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42–110b *et seq.* Defendants Minwax and Denwat now move to dismiss Utica's claims for punitive damages under the PLA, and its claims under the UCC and CUTPA.

## I. STATEMENT OF THE LAW

The facts alleged in the complaint, construed favorably to the pleader as the non-moving party, are presumed to be true for the purposes of the present motion to dismiss. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Corcoran v. American Plan Corp.,* 886 F.2d 16, 17 (2d Cir.1989). A complaint shall not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Patton v. Dole,* 806 F.2d 24, 30 (2d Cir.1986). At this stage of the litigation, the Court is not concerned with whether "the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686.

## II. BACKGROUND

The defendant Denwat, a California corporation, is in the business of manufacturing, distributing and selling an oil finish product called Watco Danish Oil Finish ("Watco"). (Complaint, ¶ 1.) A label on the Watco container includes the following instruction:

**"WATERSOAK OILY CLOTHS TO AVOID SPONTANEOUS COMBUSTION** and place cloths outside building and away from other combustible materials. Dispose in accordance with local regulations."

(¶ 11). A sales brochure distributed by the defendant Denwat included the following admonition regarding the process that should be followed for discarding the rags used for application of the product: "Let soak thoroughly and discard in rubbish for removal." (¶ 12). On July 18, 1989, an employee of the plaintiff's insured, Country Barn, attempted to apply Watco to unfinished furniture, using rags. (¶ 5). Before proceeding to apply Watco, the employee read the preceding instructions. (¶ 13). After applying Watco, the employee rinsed out the rags with water and laid them flat in an outdoor area. (¶ 6). A few hours later, a fire erupted at Country Barn. (¶ 7). The plaintiff alleges the cause of the fire was the "spontaneous combustion" of the rags containing the Watco finish. (¶ 8). The plaintiff paid property damage claims to Country Barn in the amount of $636,783.13 and alleges it paid a claim for "business income losses" in the amount of $225,630.20. The total amount paid to Country Barn is alleged to be $862,413.33.

The plaintiff alleges that Watco is a defective product under the PLA, and seeks monetary damages, attorneys fees, and punitive damages.

## III. DISCUSSION

### a. *Punitive Damages*

■ In the instant motion, the defendants contend that the plaintiff is not entitled to punitive damages because a subrogee is only entitled to indemnity to the extent of the amounts paid to discharge its obligation to its insured. The parties concede, and the Court so finds, that this particular issue has never been addressed by a Connecticut court. However, under Con-

necticut law it is axiomatic that a subrogee's rights can arise no higher than those of a subrogor. *Continental Ins. Co. v. Connecticut Natural Gas Corp.*, 5 Conn. App. 53, 60, 497 A.2d 54 (1985); *see also Connecticut Savings Bank of New Haven v. The First National Bank and Trust Company of New Haven*, 138 Conn. 298, 305, 84 A.2d 267 (1951), *citing* 11 Appleman, *Insurance Law & Practice* § 6505. It is from this premise that other courts have deduced the rule that punitive damages are unavailable to a subrogee. *See e.g. Colorado Farm Bureau Mutual Insurance Co. v. Cat Continental, Inc.*, 649 F.Supp. 49, 52 (D.Colo.1986); *Colonial Penn Insurance Co. v. Ford*, 172 N.J.Super. 242, 411 A.2d 736, 737 (1979); *Maryland Cas. Co. v. Brown*, 321 F.Supp. 309, 312 (N.D.Ga.1971); *Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1371 (Ind. App.1982).

The rule espoused by the courts that have addressed the issue is based on the accepted premise that because a subrogee's status is derivative, the subrogee is not entitled to achieve any greater rights than those which the subrogor would have been entitled. *Colorado Farm Bureau Mutual Ins. Co. v. Cat Continental, Inc.*, 649 F.Supp. at 52. As such, the subrogee "is entitled to indemnity only to the extent of the money actually paid to discharge the obligation." *Id.* Based on *Colorado Farm Bureau* and the other cited cases considering the issue, a logical extension of the Connecticut Appellate Court's teachings in *Continental Insurance Co.* supports eliminating the availability of punitive damages in this case. The circumstances do not warrant departure from the rule enunciated in the cases cited herein. As the plaintiff's action as a subrogee is truly one of indemnification, the plaintiff's recovery should be consistent with the traditional principles of indemnity law.

The plaintiff's contention that public policy concerns favor the ability of a subrogee to claim punitive damages is without merit. Courts have rejected the theory that, because the purpose of imposing punitive damages is punishment and deterrence, a subrogee's claim for punitive damages should not be precluded. *See Maryland Cas. Co. v. Brown*, 321 F.Supp. at 312; *Colonial Penn Insurance Co. v. Ford*, 411 A.2d at 737. Judge Zampano, in *National Semiconductor Corp. v. Allendale Mut. Ins. Co.*, 549 F.Supp. 1195, 1201 (D.Conn. 1982), recognized that the purpose behind the imposition of punitive damages under Connecticut law is in fact not to punish, but actually to compensate:

> Connecticut in theory recognizes the doctrine of "punitive damages," but in practice the courts have consistently rejected the notion of "punishing" the defendant and grant such damages merely as compensation for plaintiff's actual injuries and losses. [Citing] *Doroszka v. Lavine*, 111 Conn. 575, 578 [150 A. 692] (1930).

Sound policy considerations, as well as the weight of authority, support the bar to punitive damage recovery in subrogation actions. The cases relied on by the plaintiff do not support a different result. Thus, in keeping with judicial trends and the spirit of the law in Connecticut, the defendants' motion to strike count 2 is GRANTED.

### b. *UCC*

■ In the third count of its complaint, the plaintiff alleges a breach of warranty under the UCC for "commercial losses" suffered by its insured, and satisfied by the plaintiff. The defendants seek to dismiss this count on the basis that the complaint does not allege the existence of privity between the parties to the action.

The pleadings in the action sound in product liability, warranty under the UCC, and CUTPA. Essentially, this is a product liability case under General Statutes § 52–572m *et seq.* The question presented is whether privity is required under a warranty claim alleging economic loss in a products liability action. For purposes of this motion, the Court takes as true the plaintiff's allegation that its insured was reimbursed for "business income losses" as part of the amount paid to satisfy the over-

all loss suffered by the insured, and that such a claim is compensable in this subrogation action.

Connecticut's Product Liability Act permits recovery for "harm" caused by "a product." General Statutes § 52–572n(a).[1] The statute defines harm as "damage to property, including the product itself, and personal injuries including wrongful death." General Statutes § 52–572m(d). The 1984 amendments to the statute specifically exclude "commercial loss" from the statutory definition of harm: "As between commercial parties, 'harm' does not include commercial loss." *Id.*

Section 572n(c), added in 1984, illustrates the manner in which commercial loss may be recovered in an action for damages caused by a product:

> As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought *only* under, and shall be governed by, title 42a, the Uniform Commercial Code.

General Statutes § 52–572n(c). It is evident from the language of the statute itself that the plaintiff may not recover commercial losses under the PLA, and an action for economic damages may only be brought under the Uniform Commercial Code.[2] *See McKernan v. United Technologies Corp., Sikorsky Aircraft Div.*, 717 F.Supp. 60, 65–66 (D.Conn.1989) (Nevas, J.); *Cf. Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Technologies Corp.*, 116 F.R.D. 397, 418–19 (D.Conn. 1987) (Clarie, J.). The legislative history of subsection c reflects that the primary purpose of the amendment is to allow commercial entities to contractually appropriate the risk of loss associated with the use of products, "including those risks within the scope of the product liability statute." S.R. 578, P.A. 84–509 § 2, (1984). Such a concern is not at issue in this case. There is no indication from a review of the statutory history that the legislature considered a context such as this, and the attendant privity problems in situations where insurers, as third parties, make claims for business losses suffered by its insured which it seeks to recover as part of its subrogation claim.

In analyzing the privity requirements under the UCC, it is significant to note that the comments to the code recognize that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." Uniform Commercial Code § 2–313, comment (2). *See Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 83, 579 A.2d 26 (1990). Authority exists in this District which provides helpful analysis in addressing the question presented here. In *Quadrini v. Sikorsky Aircraft Division*, 505 F.Supp. 1049 (D.Conn.1981), the Court dispensed with the privity requirement in a breach of warranty action where alternative remedies were not available to the plaintiff, and allowed the employees of a buyer of a product to assert their claims against the manufacturer. In response to the defendant's claim that recovery on a contractual warranty theory is contingent upon "proof that either the plaintiff is in privity with the defendant, or qualifies as a third party beneficiary under the Connecticut version of the Uniform Commercial Code ...," the Court stated:

> [A]fter reviewing the recent Connecticut cases, this Court is not convinced that these decisions etch the privity require-

---

**1.** General Statutes section 52–572n(a) states in relevant part: "A product liability claim ... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."

**2.** It is significant to note that § 52–572n(b) specifically eliminates the privity requirement in actions brought pursuant to the statutory provisions governing product liability actions. Section 52–572n(c) directs that recovery for economic loss from harm caused by a product be pursued under the UCC, however section 52–572n(b) does not address the privity requirement in actions to recover such loss.

ment in stone. Certain decisions do appear to require privity in a contractual warranty action. Nonetheless, such rulings are uniformly based on the availability of some alternative remedy as to which privity is unnecessary.... Thus, it is arguable that what defendant perceives as a firm commitment to privity in Connecticut is ... nothing more than an application of the doctrine limited to the existence of alternative remedies wherein privity is not required.

*Id.* at 1051; *see also Resnick v. Sikorsky Aircraft, A Division of United Technologies, Corp.,* 660 F.Supp. 415, 418 (D.Conn. 1987); *Ferguson v. Sturm, Ruger & Co., Inc.,* 524 F.Supp. 1042, 1047–48 (D.Conn. 1981). Like the plaintiff *Quadrini,* the instant plaintiff is without a cause of action to recover its alleged "economic loss." Its only recourse is warranty under the UCC. If in fact the plaintiff has suffered a loss redressable in warranty, it should be able to proceed under that theory absent another available cause of action, despite the lack of privity with the defendants. This Court has previously noted that "in its consideration of whether or not to allow a third party breach of warranty claim, the Court must carefully weigh and balance all the factual and legal circumstances." *Drescher v. Hoffman Motors Corp.,* 585 F.Supp. 555, 557 (D.Conn.1984) (Clarie, J.). There is no reason to depart from this principle in this case. Both the factual and legal circumstances favor the ability of the plaintiff to proceed in warranty under the code.

The defendants' reliance on the Connecticut Superior Court decision in *City of Hartford v. Argo Industrial,* 32 UCC Rep. Serv. 75, 77 (Conn.Super.Ct.1981) for the proposition that privity is a prerequisite for the recovery of economic damages is without merit. *Argo Industrial* was decided in 1981 and was based upon an interpretation of Connecticut's Product Liability Act prior to the 1984 amendments. It did not construe the requirement in light of section 52–572n(c) and its mandate to proceed under the UCC to recover for commercial loss. Thus, the case is without precedential value, and is inapplicable to this controversy. *See Comind, Companhia de Seguros v. Sikorsky Aircraft,* 116 F.R.D. at 419. Equally without merit is the defendants' reliance on the remaining cases they cite as none address the particular issue now before the Court.

The defendants' motion to dismiss Count Three is DENIED.

### c. *CUTPA*

■ The defendants have moved to dismiss the Fourth Count of the plaintiff's complaint on the basis that Connecticut's Products Liability Act, Conn.Gen.Stat. § 52–572m *et seq.* ("PLA") precludes recovery under Connecticut's Unfair Trade Practices Act, General Statutes § 42–110a *et seq.* ("CUTPA"), because the PLA provides the exclusive remedy for a product liability claim.

The PLA expressly applies to "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of any product." General Statutes § 52–572m(b). The act further describes the scope of coverage:

> "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

*Id.* "[A] product liability claim ... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty for harm caused by a product." Conn.Gen.Stat. § 52–572n(a). The Connecticut Supreme Court has recognized the purpose behind the act is to merge the numerous causes of action that have been asserted in common law product liability actions and to create one statutory cause of action, embracing the various theories of liability. *Winslow v. Lewis–Shepard, Inc.,* 212

Conn. 462, 470, 562 A.2d 517 (1989); *Daily v. New Britain Machine Co.*, 200 Conn. 562, 512 A.2d 893 (1986). Thus, the products liability act has been interpreted to be the "exclusive remedy for claims falling within its scope." *Winslow v. Lewis-Shepard, Inc.*, 212 Conn. at 471, 562 A.2d 517.

The question presented by the instant motion is whether the CUTPA claim asserted by the plaintiff falls within the scope of claims intended to be precluded by the PLA. The Court notes that no Connecticut appellate court has ruled precisely on the effect of the exclusivity bar on CUTPA claims, and the issue has produced varying results in the lower courts.[3]

In *West Haven School District v. Owens-Corning Fiberglas Corp.*, Civ. No. H-85-1056 (AHN) Ruling on Defendants' Motion for Judgment on the Pleadings (July 21, 1988), Judge Nevas had occasion to consider whether the PLA bars actions pled simultaneously under CUTPA. In *West Haven*, the plaintiff brought a diversity action against seven asbestos manufacturers seeking damages for alleged health hazards resulting from the installation of asbestos containing materials in West Haven school buildings. The plaintiff's amended complaint contained claims under the PLA and CUTPA. Recognizing that no Connecticut appellate court had ruled on the issue whether the PLA poses a complete bar to recovery under CUTPA, the Court developed a "functional test" to determine whether the CUTPA claim is coextensive with the product liability claim, and thus, precluded by it. "[I]f the cause of action being pressed ... is essentially identical—in wrongs asserted and in relief sought—with that being pursued under the PLA, then it comes within the statute's scope and must be precluded." *West Haven School Dist. v. Owens-Corning Fiberglas Corp.*, Ruling at p.6. In applying

the test to the case before him, Judge Nevas held that the claims under the PLA and CUTPA were functionally identical because the only harm alleged under both theories was property damage caused by the asbestos containing products, a claim "fully actionable" under the PLA. The Court noted that the plaintiff failed to allege that "these acts and practices constituted more than installing and maintaining asbestos-causing materials." *Id.* at 7–8. Thus, the Court found the CUTPA claim functionally identical to the theory pled under the PLA and precluded by it. *Id.*

A similar result was reached by Judge Dorsey in a case substantively analogous to *West Haven*. In *Gnazzo v. G.D. Searle & Co.*, H-90-381 (PCD), 1990 WL 320243, Ruling on Motion to Dismiss (November 29, 1990), the plaintiff asserted claims under the PLA and CUTPA against a manufacturer of an intrauterine device, alleging that the device was defectively manufactured because the plaintiff contracted a pelvic inflammatory disease. Because the plaintiff's claims under both CUTPA and the PLA essentially asserted that the defendant's conduct in designing, manufacturing and selling the defective IUD caused the plaintiff's injuries, Judge Dorsey dismissed the CUTPA claim as precluded by the PLA for the reason that the harm alleged was "personal injury arising solely from the defective condition of the product, *not commercial loss from deceptive trade practices.*" *Id.* at pp. 4–5 (emphasis added). As such, the Court found that there were no additional allegations that "place[d] the plaintiff's claim outside the PLA's broad scope." *Gnazzo v. G.D. Searle & Co.*, Ruling on Motion to Dismiss at p. 5 (November 29, 1990).

In applying the "functional equivalent" test developed by Judge Nevas in *West*

---

**3.** Cases holding the PLA bars CUTPA causes of action include: *Janconski v. Harley-Davidson Co., Inc.*, 4 CSCR 413, 414 (Conn.Super.Ct. April 21, 1989); *Grieg v. Koehring Construction Equipment Co.*, 13 Conn.L.Trib. No. 21 at 42 (Conn.Super.Ct. Apr. 15, 1987); *Dinardo v. Coronaverden Atkiebo*, 13 Conn.L.Trib. No. 32 at 18 (Conn.Super.Ct. July 9, 1987);

Cases holding CUTPA not barred by the PLA include: *Skerritt v. Sandoz Nutrition Corp.*, 3 CSCR 17, at 566, 1991 WL 60423 (April 22, 1991); *Haesche v. Kissner*, 15 Conn.L.Trib. No. 41 (August 15, 1989); *Morissey v. Toyotomi America, Inc.*, 14 Conn.L.Trib. No. 36 at 21 (Conn.Super.Ct. Nov. 27, 1987); *Collier v. Bridgehaven Truck Sales, Inc.*, 13 Conn.L.Trib. No. 36 at 21 (Conn.Super.Ct. July 22, 1987).

**598**

*Haven* and the principles elucidated in *Gnazzo* to the case at bar, it is evident that the plaintiff's CUTPA claim in this particular case falls outside the preclusive scope of the PLA. There is no question that the plaintiff's complaint alleges harm caused by the purchase and use of Watco. As such, there exist clear allegations against the defendants under the PLA that "the product" caused harm. In addition, however, the plaintiff's CUTPA claim alleges that the plaintiff's subrogor, as part of the consuming public, were injured by alleged intentional misrepresentations of the safety of the purchase and use of Watco. Specifically, the plaintiff alleges in Count One, paragraph 14 subsections s, t, u, and v, incorporated by reference into Count Four, as follows:

s. Denwat represented to consumers, such as Country Barn, that WATCO was safe for purchase and use by consumers for the purpose intended.

t. Denwat knew or should have known that said representations were false.

u. Denwat intentionally and/or negligently made said representations for the purpose of inducing consumers, including Country Barn, to purchase and use Watco.

v. Country Barn relied on Denwat's representations in purchasing and using the product to Country Barn's detriment and injury.

Although the preceding allegations may state a cause of action under the PLA, Count Four may independently assert actionable conduct under CUTPA. *See* Conn. Gen.Stat. § 42–110b *et seq.*[4] The harm alleged may be construed to be injury arising from a defectively dangerous product, *and* injury arising out of a product allegedly represented as safe for consumer purchase and use. In light of the standard under

which this Court must adjudge the defendant's claims, it cannot be said that the plaintiff has not alleged injury outside the PLA's scope, or conduct functionally distinct from the product liability claim. In *West Haven*, Judge Nevas noted that, although the plaintiff failed to demonstrate its PLA and CUTPA claims as functionally distinguishable, "it is conceivable that a plaintiff could simultaneously independently plead a CUTPA claim and a claim under the PLA." *West Haven School Dist. v. Owens–Corning Fiberglas Corp.,* Ruling, at p. 8. This is such a case.

Thus, the defendants' motion to dismiss Count Four, based solely on the argument that the PLA precludes the CUTPA claim, must be DENIED.

### CONCLUSION

The defendants' motion to dismiss Count Two is Granted. The defendants' motion to dismiss Count Three is Denied. The defendants' motion to dismiss Count Four is Denied.

SO ORDERED.

---

[4]. The unfair trade practices statute provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42–110b(a). The statute further defines "trade or commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42–110a(4).

It is well established that the act is intended to encompass a greater range of business conduct than common law tort actions. *See Sportsmen's Boating Corp. v. Hensley,* 192 Conn. 747, 474 A.2d 780 (1984).