[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiff American Federation of State, County and Municipal Employees, Council #4, Local 1042 ("AFSCME") has filed applications to vacate arbitration awards in these two matters. The defendant, Norwalk Board of Education, has moved to deny the plaintiff's application in both cases. At oral argument, which occurred on May 19, 1997, the parties agreed that the cases raised essentially identical legal claims and that a decision in one case would be applicable to both cases. I will therefore generally restrict my discussion to Case No. CV-96-0650447-S unless otherwise indicated.
According to the Application to Vacate Arbitration Award dated May 6, 1996, plaintiff and defendant are parties to a CT Page 7036 collective bargaining agreement which provides for the arbitration of grievances. On April 12, 1996, an arbitration panel acting pursuant to the agreement issued a written award in State Board of Mediation and Arbitration Case Number 9394-A-593 (Case No. 0560447) and State Board of Mediation and Arbitration Case Number 9394-A-592 (Case No. 0560448). In both cases, the arbitration panel found that the respective cases were not arbitrable. The rulings of the board are appended to this memorandum as Exhibits A and B, respectively. In both cases, the plaintiff, pursuant to Connecticut General Statutes Section52-418, has moved to vacate the awards, alleging that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made; that the award has been procured by corruption, fraud or undue means; and that the arbitrators are guilty of misconduct by which the rights of the Union have been prejudiced.
For the reasons stated below, the plaintiff's motions to vacate the arbitration awards in these matters are denied.
Legal Discussion
These cases both present the same, dispositive issue: Whether or not the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was made pursuant to Connecticut General Statutes Section 52-418 (a), when they decided that the subject grievances were not arbitrable.
As defendant notes, the scope of judicial review of an award is limited by the terms of the parties' agreement and the provisions of our General Statutes. American Universal InsuranceCompany v. DelGreco, 205 Conn. 178, 185 (1987). When examining an award, the court examines the award and the parties' submissions to arbitration to determine if the award conforms to the submission. City of Waterbury v. Waterbury Police Union, Local1237, 176 Conn. 401 (1979). This limited judicial review applies both to matters of procedure and substantive determinations, and includes determinations of whether a matter is arbitrable. Townof East Hartford v. East Hartford Municipal Employees Union,206 Conn. 643, 650-656 (1988). All reasonable presumptions are to be made in favor of the arbitrators' award and their acts and proceedings. Ramos Iron Works, Inc. v. Franklin ConstructionCompany, 174 Conn. 583, 590 (1978). In light of these principles, the court may not substitute its conclusions for those of the CT Page 7037 arbitrators. City of Hartford v. IAFF, Local 760, 24 Conn. App. 254,258 (1981). The burden of demonstrating the non-conformity of the award to the submission is on the party seeking to vacate the award. City of Bridgeport v. Connecticut Police DepartmentEmployees Local 1159, AFSCME, Council 15, 32 Conn. App. 289, 293,cert. denied, 227 Conn. 925 (1993). The award itself controls, not the accompanying memorandum of the arbitrators. ContinentalInsurance Company v. Connecticut Natural Gas Corporation,5 Conn. App. 53, 56 (1985). In determining whether the arbitrators have exceeded their authority, the reviewing court looks to the provisions of the parties' agreement. Board of PoliceCommissioners of City of New Haven v. Maher, 171 Conn. 613, 621
(1976).
Article IX of the Agreement provides that grievances are to be settled "at the level closest to the source of the grievance," and then provides a specific process, in five steps, for the presentation and handling of grievances. More specifically, the steps provide for the initial presentation of a written grievance and written responses by the custodial or maintenance supervisor (step one); the superintendent of schools' designee (step two); the superintendent of schools or his representative (step three); the Norwalk Board of Education (step four); and, if the dispute is still not settled, arbitration before the State Board of Mediation and Arbitration (step five). As defendant notes, these explicit steps have explicit time lines. As defendant also notes, Article IX of the agreement itself provides that the arbitrators "shall not have the power to add to, subtract from, vary, modify or amend the terms of this agreement." This provision significantly limits the scope of what the arbitrators may do and prohibits them from rendering an award that alters any provision of the agreement between the parties. Board of Education of Cityof New Haven v. AFSCME, Council #4, 195 Conn. 266, 271-272
(1985). As defendant notes, the arbitrators are thus severely circumscribed in what they may do and the manner in which they may do it. As has been state by the United States Supreme Court:
 [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this CT Page 7038 obligation, courts have no choice but to refuse enforcement of the award. United States Steelworkers of America v. Enterprise Wheel Car Corp. , 363 U.S. 593, 597 (1960).
Review of the full record indicates that in the instant cases, the panel concluded that the plaintiff failed to proceed in accordance with the five-step procedure provided for in the agreement. The panel concluded that he demanded arbitration as outlined in the fifth step without having fully proceeded through the earlier steps.
Plaintiff's most significant argument is, in essence, that there is a "past practice" of ignoring the grievance procedure, and that this "past practice" effectively supplants the need for him to proceed in accordance with the five-step process outlined in the agreement. However, this argument is not ultimately persuasive, for more than one reason.
First, as defendant notes, examination of the record makes it clear that the issue of alleged past practices was presented to the arbitrators by the parties. See defendant's arbitration briefs, Attachment A to defendant's January 9, 1997, Memorandum of Law in Opposition. It is clear that the arbitrators were familiar with, considered and rejected plaintiff's "past practice" claim. In both decisions, at page three, the arbitrators stated as follows in relevant part:
 A majority of the panel finds that he grievance is not arbitrable. The panel is not convinced by the Union's claim that the past practice of meeting to resolve grievances both before and after the execution of the current contract dated July 1, 1992 to June 30, 1997, nullifies the grievance procedures outlined therein. If the practice that the Union claims existed since 1971 was intended to be continued by the parties, they had the opportunity to make changes when the current contract was being negotiated.
In both cases, therefore, the arbitrators decided that the cases were not arbitrable. It is within the arbitrators' discretion to weigh evidence and make factual findings where the submission does not prohibit this. Masters v. Masters,201 Conn. 50, 72 (1986). It is also within the discretion of the CT Page 7039 arbitrators to determine that even if a "past practice" existed, clear and unambiguous contractual language in an agreement should override such a practice in the absence of an indication the parties waived compliance with explicit terms of the agreement.Detroit Coil Company v. International Association of Machinistsand Aerospace Workers, Lodge #82, 594 F.2d 575, 580-581 cert.denied, 444 U.S. 840 (1979). That is fundamentally what the arbitrator concluded in these cases.
I agree with defendant, therefore, that any "past practice" claim under Article XXII must fail. Article XXII provides that "Previous benefits mutually agreed to as established practices heretofore and [sic] have not been superseded by the provisions of this Agreement, shall be a part of this Agreement." Here, the arbitrators concluded, essentially, that the explicit, five-step procedure set out in the agreement superseded any alleged past practice.[1]
Summary and Conclusion
Review of the full record persuades me that plaintiff's have failed to show that the arbitrators have exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. I conclude that the arbitrators considered and rejected the past practices claim. I also conclude that the grievance procedure, which plaintiff failed to follow, contained explicit procedures which the arbitrators could have reasonably viewed as superseding any past practice to the contrary.
Consequently, plaintiff's applications to vacate the arbitration awards in these matters are denied.
Douglas S. Lavine, Judge