**BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**PHILIP MORRIS, INCORPORATED, et al., Defendants.**

**No. 98 CV 3287(JBW).**

United States District Court, E.D. New York.

Feb. 27, 2001.

Dewey Ballantine LLP, New York by Paul J. Bschorr, Vincent R. FitzPatrick, Jr., Jack E. Pace III, Paul B. Carberry, Robert J. Morrow, Dewey Ballantine LLP, Washington, DC by Martha J. Talley, for Plaintiffs Blue Cross, et al.

Arnold & Porter, Washington, DC by Murray R. Garnick, Sedgwick, Detert, Moran & Arnold, San Francisco, CA by Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold, New York City by James T. Conlon, for Defendant Philip Morris, Incorporated.

Sedgwick, Detert, Moran & Arnold, New York City by David M. Covey, Kirkland & Ellis, Washington, DC by Kenneth N. Bass, for Defendant Brown & Williamson Tobacco Corporation.

Greenberg Traurig, LLP, New York City by Alan Mansfield, Shook, Hardy & Bacon, LLP, Kansas City, MO by Gary R. Long, for Defendants Lorillard Tobacco Company, Lorillard, Inc.

Debevoise & Plimpton, New York by Steven Klugman, for Defendant Council for Tobacco Research, U.S.A., Inc.

Jacob, Medinger & Finnegan, LLP, New York City by Barry S. Schaevitz, for

Defendant Smokeless Tobacco Council, Inc.

Womble, Carlyle, Sandridge, & Rice, PLLC, Atlanta, GA by R. Dal Burton, for Defendants R.J. Reynolds Tobacco Co., and RJR Nabisco, Inc.

Chadbourne & Parke LLP, New York City by Thomas J. McCormack, for Defendant British American Tobacco (Investments) Limited (formerly known as British–American Tobacco Company Limited).

Simpson Thacher & Bartlett, New York City by Joseph McLaughlin, for Defendant BAT Industries P.L.C.

Davis & Gilbert, LLP, New York City by Bruce M. Ginsberg, for Defendant Hill & Knowlton, Inc.

Kasowitz, Benson, Torres & Friedman LLP, New York City by Michael M. Fay, for Defendants Liggest Group Inc., Liggest & Myers, Inc., and Brooke Group Ltd.

Skadden, Arps, Slate, Meagher & Flom, LLP, New York City by Peter J. McKenna, for Defendant United States Tobacco Company.

Seward & Kissel, New York City by Anthony R. Mansfield, for Defendant The Tobacco Institute, Inc.

## MEMORANDUM & ORDER

WEINSTEIN, Senior District Judge.

## TABLE OF CONTENTS

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164

II.  Prerequisites For Summary Judgement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

III. Sufficient Link Between Consumer Protection Act Violations and Damages . . . . . 165
     A.  Requirement of Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165
     B.  Prospective Application of Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166
     C.  Prospective Force of Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

IV.  Aggregated Proof and Erie R. Co. v. Tompkins . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167
     A.  Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167
     B.  Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171
         1. Statistical Evidence To Prove Individual Loss . . . . . . . . . . . . . . . . . . . . . . . 172
         2. State Substantive Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 173
            a. Proof By Statistics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 173
            b. Right of Party Injured But Not Deceived . . . . . . . . . . . . . . . . . . . . . . . . . . 174

V.   Regulatory Compliance under New York Consumer Protection Act . . . . . . . . . . . . . 174
     A.  Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175
     B.  Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176

VI.  Subrogation and Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176
     A.  Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176
     B.  Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178

VII. Remoteness of State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 179

VIII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 179

Defendant Tobacco Companies move for summary judgment on plaintiff's New York based common law fraud and Consumer Protection Act (the "Act") claims. The motion is denied. The case may proceed on both federal and state substantive theories. In a massive case of this nature a final resolution of all viable claims, state and federal, in one court utilizing one procedure is permitted.

## I Introduction

Plaintiff Empire Blue Cross & Blue Shield of New York ("Empire") seeks re-

covery from major tobacco product manufacturers and related entities ("Tobacco") for alleged misrepresentations and deceptive conduct regarding the effects of tobacco use on their subscriber's health, resulting in increased health care costs for Empire. The underlying facts have been described in prior orders. *See, e.g., Blue Cross v. Philip Morris, Incorporated,* 113 F.Supp.2d 345 (E.D.N.Y.2000) (denying defendants' motion for summary judgment on plaintiff's RICO claims).

The grounds asserted by defendants for summary judgment are:

1) A sufficient link between alleged state law violations and damages cannot be established.

2) The claims cannot be supported by aggregate proof without disturbing the substantive nature of the state law claims in violation of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3) Tobacco's compliance with federal regulations provides a complete defense to the New York Consumer Protection Act claims.

4) Empire, as a subrogee, cannot seek punitive damages on a common law fraud claim.

5) The state law claims are too remote.

All must be rejected for the reasons described below.

## II   Prerequisites For Summary Judgement

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Mitchell v. Washingtonville Central School District,* 190 F.3d 1, 5 (2d Cir.1999). "In consider-

ing the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The burden rests initially with the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. See Fed.R.Civ.P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture[.]" *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) ("Conclusory allegations will not suffice to create a genuine issue."). In deciding the motion all inferences and ambiguities are to be resolved in favor of the party opposing summary judgment. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper. See *Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

## III   Sufficient Link Between Consumer Protection Act Violations and Damages

### A.   Requirement of Causation

Damages must be traced to unlawful acts. *United States Football League v. National Football League,* 842 F.2d 1335, 1377 (2d Cir.1988) (citing *MCI Communications v. American Telephone & Telegraph Co.,* 708 F.2d 1081, 1161 (7th Cir. 1983)). Under plaintiff's substantive theory proof of causation is essential. The Supreme Court emphasized the necessity

of this link in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946). It relaxed the standard for proving the amount of damages only after "proof of defendant['s] wrongful acts and their tendency to injure plaintiff['s] business, and from the evidence of the decline in prices, profits and values, not shown to be attributable to other causes." 327 U.S. at 264, 66 S.Ct. at 579.

Defendants argue that summary judgment should be granted because Empire cannot connect Tobacco's alleged misconduct to its alleged damages. Specifically, Tobacco claims Empire's statistical damage model 1) includes post–1980 damages resulting from irrelevant pre–1980 conduct, and 2) fails to distinguish between antitrust and fraud damages. For the reasons stated below, it appears reasonable to apply the New York Consumer Protection Act only prospectively to acts committed after 1980 in private suits such as the instant one. Because plaintiff has indicated it will revise damage estimates and its statistical and other proof to conform with prospectivity requirements, decision is reserved regarding sufficiency of the evidence pending further submissions by the parties.

### B. Prospective Application of Act

█ The crux of defendant's first argument involves an interpretation of the New York Consumer Protection Act, New York General Business Law sections 349 and 350. Both sections were amended to create a private right of action for damages on June 19, 1980. *See generally* New York General Business Laws §§ 349(h) & 350–e(3) (McKinney 1994). The parties agree that under both sections a party may not recover for damages sustained prior to that date. Plaintiff's contention, contested by defendants, is that it may recover damages suffered after 1980 that resulted from misconduct that occurred prior to that. date; on this point defendants are correct.

█ Generally, New York statutes are applied prospectively, unless there is a clear legislative indication to the contrary. *See Rudin Management Co. Inc. v. Commissioner, Dept. Of Consumer Affairs*, 213 A.D.2d 185, 623 N.Y.S.2d 569 (N.Y.App. Div.1995). Retroactive application of a statute is inappropriate when it would deprive a party of "a substantial right" or "impose an unexpected liability." New York Statutes Law § 53 (McKinney 1994) (commentary).

Limited exceptions to non-retroactivity do exist for those statutes designed to correct imperfections in prior law. They may be liberally construed and given a retroactive construction only to the extent that they do not impair vested rights or create new rights. *See generally* New York Statutes Law §§ 52–54 (McKinney 1994) (commentary). Restrospectivity of statutes is not favored. New York Statutes Law § 52 (McKinney 1994) (commentary) ("The courts no longer follow the ancient rule of statutory construction under which amendatory acts were to be construed as though part of the original enactment, and retroactive effect was given to them accordingly."). Substantial amendments are interpreted with the prospective force of an independent statute. *Id.*

### C. Prospective Force of Act

Plaintiff argues that the Act applies to damages suffered after the 1980 date of enactment, even if the acts giving rise to the damages were committed before. It cites *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1,7, 679 N.Y.S.2d 593, 599 (N.Y.App.Div.1998), for the proposition that actual injury is required for a private cause of action under the Act so that even if the acts of defendant took place earlier, it is prospective to take them into account so long as the damages were suffered after enactment because only at the time damages are suffered does the cause of action accrue. Reliance on *Small* is misplaced. That case evaluated a plaintiff's burden of proof under the Act. It did not deal with the retroactivity question—when a pro-

spective defendant should be on notice that its acts may result in civil liability to an injured party.

The substantive proscriptions of Sections 349 and 350 were enacted in 1970 and 1963, respectively. Prior to the 1980 amendment providing a private right of action, these provisions were . enforceable only by the state. There is obviously some merit in plaintiff's contention that defendants were acting illegally from the date of the original enactment—1963 and 1970—so that it would not be unfair to apply the Act from the earlier dates rather than from 1980, the date an injured private person was granted the right to sue. In theory plaintiffs had the right not to be injured before it could sue on its own behalf for those injuries. The rationale for limiting retroactive application of such statutes is to avoid affecting a defendant's antecedent obligations and it was obligated not to violate the Act long before 1980. Yet, looking at the practicalities of the matter, "[s]o long as the statute was enforceable solely by government it was largely precatory." *Falise v. American Tobacco Co.*, 2000 WL 1880303, No. CV 97–7640 (E.D.N.Y., Dec. 27, 2000); *cf.* Daniel Guttman, *Public Purpose and Private Service: The Twentieth Century Culture of Contracting Out and the Evolving Law of Shared Sovereignty*, 52 Admin. L.Rev. 859, 918 (2000) (describing impact of using private actors to vindicate public rights).

Without a private remedy there was in effect no private right before 1980. Only when private persons could bring suits and the powerful enforcement agency of the plaintiff bar was brought to bear did the Act provide teeth in addition to its snarl. *See e.g., Buccino v. Continental Assurance Co.*, 578 F.Supp. 1518 (S.D.N.Y.1983); *cf. Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (refusing to apply statutory amendment expanding private party standing for qui tam suits retroactively because it "essentially create[d] a new cause of action."); *see also* Howard M.

Erichson, *Coattail Class Actions: Reflections On Microsoft, Tobacco, and the Mixing of Public and Private Lawyering in Mass Litigation*, 34 U.C. Davis L.Rev. 1, 41 (2000) (describing the effectiveness of combining public and private actions in enhancing deterrence).

While the matter is not free from doubt, it appears reasonable to apply the Act only prospectively to activities after 1980 in private suits such as the instant one. Actions of defendants prior to 1980 may, nevertheless, be evidence of activities post–1980.

Defendants also contend that plaintiff's damage estimate cannot be linked to its consumer protection claims because it is based on the wrong type of conduct. They claim that Empire's damage model only links damages to alleged antitrust violations, not violations of section 349, section 350, or common law fraud. The plaintiff has indicated it will revise damage estimates based on fraud rather than on antitrust claims pursuant to the court's suggestions at oral argument. At this stage the legal sufficiency of the plaintiffs damage estimates cannot be determined.

## IV Aggregated Proof and Erie R. Co. v. Tompkins

Although aggregated proof for plaintiff's federal RICO claims has already been approved, *see Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*, 113 F.Supp.2d 345 (E.D.N.Y.2000), defendants argue that this issue must be revisited in accordance with the dictates of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) in connection with state law claims. For the reasons stated below, plaintiff's use of aggregated proof is consistent with *Erie*.

### A. Law

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Hogan v. Wal–Mart Stores*, 167 F.3d 781(2d Cir.1999) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S.

415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When a federal procedural rule is valid and on point, the federal rule controls. *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965); 28 U.S.C. § 2072(b)(describing the preemptive effect of the Rules Enabling Act). Rules falling outside the scope of a federal rule, require courts to ask under *Erie* whether conflicting laws are substantive or procedural.

The line between substance and procedure shifts as the legal context changes. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), an early interpretation of *Erie*, created an outcome-determinative test. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1469–1470, 89 L.Ed. 2079 ("[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?"). In subsequent cases, the Supreme court qualified *Guaranty Trust*, explaining that the outcome-determinative test must not be applied mechanically. *See Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958) (the federal courts must analyze the state and federal interests in having their rules applied); *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965) (application must be guided by "the twin aims of the Erie rule: discouragement of forumshopping and avoidance of inequitable administration of the laws.").

While the burden of proof under *Erie* is governed by applicable state substantive law, *cf. Cities Service Oil Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939), evidentiary issues—like the admissibility of statistical sampling—are controlled by federal procedural rules. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (legal admissibility determined

under Fed.R.Evid. 702). Statistical sampling is available in federal courts as a procedural matter. The Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals Inc.* allows statistical methods of scientific research and proof under Rule 702 of the Federal Rules of Evidence so long as they are reliable. *See generally* Laurens Walker and John Monahan, *Sampling Liability*, 85 Va. L.Rev. 329, 332–333 (1999). To be admitted the proof must comply with recognized standards for admissible and probative evidence permitting a fair adjudication. 2 *Newberg On Class Actions* § 10.05 (1985); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (trial judges have the obligation, pursuant to Fed.R.Evid. 702 to ensure that all "technical, or other specialized knowledge" is deemed reliable before it is admitted); *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (trial judges have the obligation, pursuant to Fed.R.Evid. 702 to ensure that all "scientific" evidence is deemed reliable before it is admitted); *Reference Manual of Scientific Evidence* (Federal Judicial Center) (2d ed.2000) (providing guidelines for the effective management of scientific evidence in federal district courts).

The legal sufficiency of scientific evidence, as contrasted with its legal admissibility is governed by the well-established standards governing judgment as a matter of law—whether, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached." *In Re Joint Eastern & Southern District Asbestos Litigation v. United States Mineral Products Company*, 52 F.3d 1124, 1132 (2d Cir.1995) (permitting statistical evidence to go to jury). The issue of sufficiency was not squarely before the *Daubert* Court, but Justice Black-

mun's opinion did briefly address it. Once pieces of scientific evidence pass the admissibility threshold, the "appropriate" means of challenging those which appear shaky or unreliable include the "traditional" devices of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 113 S.Ct. at 2798. Ample authority supports the conclusion that statistical calculations here may satisfy both federal and New York standards of evidentiary sufficiency, without altering substantive elements of the law. Robert A. Barter & Vincent C. Alexander, *Evidence in New York State and Federal Courts* § 300.3(b) (1999) (standard of legal sufficiency same in New York and Federal practice).

Computation of damages through statistical methods is admissible and sufficient as a matter of federal and state practice. Laurens Walker & John Monahan, *Sampling Damages*, 83 Iowa L.Rev. 545, 546 (1998)("A complete solution of the number problem in mass torts can only be achieved by ... randomly sampling damages without apology."); *cf. Malcolm v. National Gypsum Co.*, 995 F.2d 346, 355 (2d Cir. 1993) (Walker, J., dissenting) ("Consolidated trials are an indispensable means of resolving the thousands of asbestos claims flooding our state and federal courts, as well as claims arising from other types of mass torts."). *See also* Part IV B 1, *infra*.

Absolute precision as to damages is not required. *See New York Pattern Jury Instructions* 2:277 Damages: General—Commentary (3d.2000) (citations omitted) ("...the fact finder has the right to resort to reasonable conjectures and probable estimates ... This is particularly so where the conduct of wrongdoers has rendered it difficult to ascertain the damages suffered with the precision otherwise possible."). They may be proven by reference to a class as a whole, rather than by reference to each individual class member. *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976), cert. denied, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); *cf.*

*Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320 (N.D.Ill.1991)(defendants had no absolute right to individualized determination of damages; in appropriate circumstances individual issues could be resolved with class-wide proof). Statistically based proof is particularly appropriate in the realm of mass tort litigation where the universe to be sampled is so large. *See, e.g., In re DES Cases*, 789 F.Supp. 548 (E.D.N.Y.1992) (market share liability applied in suits for defective design of diethylstilbestrol (DES)); *In re Joint Eastern and Southern District Asbestos Litig.*, 726 F.Supp. 426 (E.D.N.Y.1989) (computation of damages for Brooklyn Navy Yard asbestos victims); *In re "Agent Orange" Product Liability Litig.*, 689 F.Supp. 1250 (E.D.N.Y.1988) (distribution scheme for victims of agent orange); *see also Manual for Complex Litigation* § 33.21–29 (3d ed.1995) (mass torts).

Statistics may be used to prove causation as to a proportion of the entire class (these smokers and former smoker subscribers of the plaintiff) as well as the probability, through satisfaction of burdens of proof, that the proportions are in accord with those in the real world. *See, e.g.*, Louis Kaplow & Steven Shavell, *Fairness Versus Welfare*, 114 Harv. L.Rev. 961, 1203 n.580 (2001) (use of sampling to determine awards in mass tort cases is a cost efficient way to satisfy the procedural, deterrence, and compensatory objectives of tort regime); Michael J. Saks & Peter David Blank, *Justice Improved: The Unrecognized Benefits of Sampling and Aggregation in the Trial of Mass Torts*, 44 Stan. L.Rev. 315 (1992); Robert G. Bone, *Statistical Adjudication: Rights, Justice, and Utility in a World of Process Scarcity*, 46 Vand. L.Rev. 561 (1993); Steve Gold, *Causation in Toxic Torts: Burdens of Proof, Standards of Persuasion, and Statistical Evidence*, 96 Yale L.J. 376 (1986); David Rosenberg, *The Causal Connection in Mass Exposure Cases: A 'Public Law' Vision of the Tort System*, 97 Harv. L.Rev. 849, 870 (1984) (footnotes

omitted) ("The concept of 'particularistic' evidence suggests that there exists a form of proof than can provide direct and actual knowledge of [the parties' conduct]. 'Particularistic' evidence, however, is no less probabilistic than is the statistical evidence that courts purport to shun"); *see also* Johnathan J. Koehler & Daniel Shaviro, *Veridical Verdicts: Increasing Verdict Accuracy Through the Use Of Overtly Probabilistic Evidence and Methods,* 75 Cornell L.Rev. 247, 248 (1990) (although courts should carefully determine the validity of probabilistic evidence, "overtly probabilistic evidence is no less probative of legally material facts than other types of evidence."); Michael J. Saks & Robert F. Kidd, *Human Information Processing and Adjudication: Trial By Heuristics,* 15 Law & Soc'y Rev. 123, 151 (1989–1990) ("Much of the testimony that is commonly thought of as particularistic only seems so. It is far more probabilistic than we normally allow jurors (or judges) to realize."); David H. Kaye & David A. Freedman, Reference Guide on Statistics, Manual on Scientific Evidence 381 (Federal Judicial Center ed.1994) (statistical techniques for estimating the probability that sample is representative of population are well established); *cf. The Evolving Role of Statistical Assessments as Evidence in the Courts* 78–79 (Report of the American Academy of Science Panel on Statistical Assessments as Evidence in the Courts) (Stephen E. Fienberg ed.1989) (noting the contradiction between the court's insistence on evidence that seems certain, and such "probabilistic" institutions as plea bargaining, in which decisions are made on the basis of "probable" outcome). Using sampling to determine liability related issues in cases with large numbers of claims reduce expenses for the parties and the court system, saves information costs, and promotes the general goals of compensation and deterrence in tort law. *See* D. Hensler, *Resolving Mass Toxic Torts: Myths and Realities,* 1989 U.Ill.Rev. 89, 104 (1989) ("[T]he use of formal aggregative procedures may provide more litigant control over the litigation process, more opportunity for litigant participation in the process, and a better match between victims' losses and compensation for these losses."); *see also* Laurens Walker and John Monahan, *Sampling Liability, supra;* Louis Kaplow & Steven Shavell, *Fairness Versus Welfare, supra* at 1207.

More efficient fact-finding through statistical analysis also makes for a more equitable and effective administration of substantive law because it improves accuracy, thus reducing warping of a state substantive law's effects. *See* Louis Kaplow & Steven Shavell, *Fairness Versus Welfare,* 114 Harv. L.Rev. 961 1203 (2001). While forum shopping might be encouraged if the appropriate statistical techniques were not available in state courts, there is no reason to believe that states would reject such statistical analysis. *See* David L. Faigman et. al., *Modern Scientific Evidence: The Law and Science of Expert Testimony § 1–3.0,* at 11 n. 7 (1997) (Nineteen states have accepted the essential principles of *Daubert* for admitting scientific proof). State common law and state statutes provide that causation may be proved by "statistical analysis" as well. *See, e.g.,* Fla. Stat. Ann. § 409.910(9) (West 1998); Md.Code Ann., Health–Gen. I § 15–120 (West 1998); Vt. Stat. Ann. tit. 33, § 1911(f)(5) (West 1998); *Cf. Group Health Plan, Inc. v. Philip Morris Inc.,* 621 N.W.2d 2 (Minn.2001) (use of circumstantial and statistical evidence by Health Maintenance Organization supporting misrepresentation claim permissible under Minnesota consumer protection statute given the broad social import of the law).

Even though New York state courts have not fully embraced *Daubert,* they can be expected to rely upon appropriate statistical sampling, as they have in discrimination, tax assessment determinations, DNA sampling and criminal cases. *See, e.g., People v. Chesler,* 91 Misc.2d 551, 398 N.Y.S.2d 320 (N.Y.Sup.Ct.1977) (sampling to determine discrimination in jury pool); *860 Executive Towers v. Bd. of Assessors*

*of Nassau County,* 84 Misc.2d 525, 377 N.Y.S.2d 863 (N.Y.Sup.Ct.1975) (equal probability sampling in tax assessment determinations appropriate); *People v. Wesley,* 83 N.Y.2d 417, 611 N.Y.S.2d 97, 633 N.E.2d 451 (N.Y.1994) (DNA identification analysis proper); *People v. Shi Fu Huang,* 145 Misc.2d 513, 546 N.Y.S.2d 920 (N.Y.Co.Ct.1989) (DNA evidence admissible subject to lowest proposed figure of probability); *People v. Victory,* 166 Misc.2d 549, 631 N.Y.S.2d 805 (N.Y.City Crim.Ct.1995)(scientific reliability of admitting retrograde extrapolation of alcohol in bloodstream); *People v. McLaurin,* 157 Misc.2d 783, 598 N.Y.S.2d 911 (N.Y.Sup. Ct.1993) (extrapolation method permitted to determine amount of drugs); *see, e.g.,* Fisch on New York Evidence § 1018 (2d ed.1977); Randolpf N. Jonkait, Harold Baer, Jr., E. Stewart Jones, Jr., & Edward J. Imwinkelried, *New York Evidentiary Foundations,* 112–113 (1998) (somewhat higher standards for admissibility under New York law than under federal law); Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts (1996)(same); *see, e.g., Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (court of appeals erred in disregarding petitioners' statistical proof and in deciding that plaintiff's multiple regression analyses were unacceptable as evidence of discrimination); *Schering Corporation v. Pfizer, Inc.,* 189 F.3d 218, 224 (2d Cir.1999) (surveys are routinely admitted in patent, trademark and false advertising cases); *Ottaviani v. State University of New York at New Paltz,* 875 F.2d 365, 370–71(2d Cir.1989) (statistically significant evidence is frequently relied on in disparate treatment cases to establish that there is a disparity between the predicted and actual treatment of employees who are members of a disadvantaged group); *see, e.g.,* R. David W. Barnes & John M. Conley, *Statistical Evidence in Litigation,* 13 (1986) ("There is at present virtually no area of the law in which properly conceived and executed statistical proof cannot be admitted."). Thus, on balance *Erie* is not violated by the federal courts' evidentiary freedom to utilize statistical models and other scientific evidence.

## B. Application

Defendants argue that Empire's use of statistical evidence to resolve questions of reliance, causation, and statute of limitations questions violates *Erie R. Co. v. Tompkins* by substantively altering the nature of plaintiff's state law causes of action. They contend that claims must, as a matter of substantive law, be based upon proof of individual injury by an individual's smoking, reliance, and disease. Although the use of statistical proof in Empire's RICO payment action has already been approved, *see Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.,* 113 F.Supp.2d 345 (E.D.N.Y.2000), defendants argue that *Erie* concerns pose an additional hurdle for the plaintiff. They contend that the Appellate Division's holding in *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (N.Y. 1999) denying certification of a Tobacco class action, underscores the need for proving injury under common law fraud and sections 349 and 350 with individual proof. As a result, their argument goes, substantive elements of New York state law claims cannot be addressed without individual adjudication of hundreds of thousands of subrogated claims. As demonstrated below, statistics may be admitted to prove individual injuries, without altering the substantive provision of a fraud action in violation of *Erie.* Methods for aggregating proof are procedural, even though they have an incidental substantive impact. *See Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) ("Rules which incidentally affect litigants's substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules.").

To the extent that statistical methods may have an impact on the outcome of

the case, they are consistent with New York law. *Small* did not decide, nor could it, whether a class action was appropriate under federal procedural law; nor did it discuss the applicability of aggregate proof. Certification of classes under New York State law is more restrictive than it is under federal law. *Cf.* David Siegel, *New York Practice*, 234–238 (3rd ed.1999) (describing factors considered in deciding whether to certify a state class action and attitude of judges). The Appellate Division's decision against certification is discretionary, subject to almost no review by the New York Court of Appeals. *See* Arthur Karger, *The Powers of the New York Court of Appeals* 57 (2001); Herbert M. Wachtell and Theodore N. Mirvis, *New York Practice Under the CPLR* 149 (6th ed 1986). Thus, a state decision not to certify is of limited precedential value under *Erie* on the issue of whether a federal class action is justified. Nor does *Small* answer the question of whether a single plaintiff—massively damaged because of thousands of individual frauds on its clients—is precluded from an appropriate remedy under either federal procedural or state substantive law. In fact, the broad private right of action afforded under sections 349 and 350 suggests that New York courts would welcome statistical proof used by such a plaintiff.

1. Statistical Evidence To Prove Individual Loss

■ The heart of defendants' argument is that statistics may be used only to prove general causation and injury, but that demonstrations of individual causation and injury require individual proof. The contention is not applicable to a case such as the present one. Statistical proof is available for every element of a claim in a mass tort action. *See, e.g., In Re Joint Eastern & Southern District Asbestos Litigation v. United States Mineral Products Company,* 52 F.3d 1124, 1132 (2d Cir. 1995) (permitting statistical evidence to go to jury). As already demonstrated in part IV A, *supra,* case law and treatises on the

subject confirm the propriety of statistical evidence as a form of proof of the all substantive elements of a viable claim, particularly in mass tort actions. *See, also, e.g., In re Estate of Ferdinand Marcos, Human Rights Litigation,* 910 F.Supp. 1460 (D.Haw.1995) (using sampling to determine compensatory damages through extrapolating "exposure" element of liability), *aff'd sub nom Hilao v. Estate Of Marcos,* 103 F.3d 767 (9th Cir.1996); *Stewart v. General Motors Corp.,* 542 F.2d 445 (7th Cir.1976), cert. denied, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); *Zippo Manufacturing Co. v. Roger Imports,* 216 F.Supp. 670 (S.D.N.Y. 1963) (relying on sampling methodology); *Newberg on Class Actions* § 10.05 (When aggregate proof of damages is sought to be proved on behalf of a class, no special or unique rules of evidence are involved.); Allan Kanner, *Environmental and Toxic Tort Issues,* American Law Institute— American Bar Association Continuing Legal Education, SC84 ALI–ABA 713 (1998) (describing the appropriateness of aggregate proof in toxic tort cases). Statistics may provide proof of both the causality nexus and the probability that this connection applies to individuals as well as to proportions of a population. Here it would be enough for Empire to show that proportions of its subscriber population relied and were damaged even if it does not identify particular persons who relied and who were damaged.

A distinction must be drawn between substantive elements of a claim and procedural methods of proof. *See* Steve Gold, *Causation in Toxic Torts, supra.* In an extreme case, for example, imagine that statistics demonstrate 99 out of 100 cases of specific causation in a particular group. In addition, imagine statistics also demonstrate 99 out of 100 cases of reliance in the same group. Even if these sets do not include the exact same 99 people, there is no reason one cannot accept as more likely than not reliance and causation in approximately 98 percent of the population (99%

× 99% = 98%). A fortiori, the case which depends on total damages to a plaintiff through aggregation of client-by-client claims—that is to say damages to a proportion of an entire subscriber population—can safely support the proposition that 98 persons were caused to be injured by, and relied upon, a fraud; it is this situation which Empire brings to the court. Obviously, plaintiff's models are in the less than 98% category, but the problems posed are ones of degree and burdens of proof. They do not alter the substantive elements of New York State law or the procedural elements of federal law.

Defendants contend that while such methods of proof may be procedural, the use of statistics may have a substantive impact on the outcome of the case. That is true, but it is not dispositive of their *Erie* claim. Every procedural rule may have a substantive impact because every procedural rule makes it either easier or more difficult to prove a case. That fact of adjudicative life does not make a rule substantive for *Erie* analysis. *See Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 ("[W]ere 'outcome' the only consideration, a strong case might appear for saying that the federal court should follow the state practice. But there are affirmative countervailing considerations at work here"); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 464, 116 S.Ct. 2211, 135 L.Ed.2d 659 ("Outcome determination was never intended to serve as a talisman, *Hanna v. Plumer*, 380 U.S. 460, 466–467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965), and does not have the power to convert the most classic elements of the process of assuring that the law is observed into the substantive law itself.") (Scalia J., dissenting). While statistical methods certainly ease the plaintiff's ability to satisfy its burden of proof, it does not alter the elements of New York State substantive law. The plaintiff still must prove to a jury that defendants' alleged misconduct caused specific injuries to subscribers

in violation of the substantive elements of its state law claims.

2. State Substantive Law

a. Proof By Statistics

Even if the use of statistics presented a substantive law question, such proof is consistent with the aims of New York State common law and statutory fraud. Defendants, as already noted in part III C and the introduction to part IV B, *supra*, rely on *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 679 N.Y.S.2d 593 (N.Y.App.Div. 1998) to support their argument that New York substantive law requires proof of reliance, causation and damages on an individual basis. This over-reading of *Small* would unnecessarily make this mass action impossible to try. In *Small*, the First Department refused to certify a class of more than a million nicotine dependant smokers because each plaintiff would need to show that he relied on defendants' misleading statements on addiction to prove injury, and thus the trial, as a class, would be unmanageable. Notably, in *Small* the court never decided the appropriateness of statistical sampling to prove such injuries. *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d at 601.

In the instant case Empire alone is the claimant and its damages may be precisely determinable even though those of each of its specific clients may not be. Considerations present in individual class action suits, such as *Small*, do not apply to this action. As stated in *Blue Cross & Blue Shield of New Jersey*, distinguishing the Fifth Circuit cases of *Cimino v. Raymark Indus.*, 151 F.3d 297 (5th Cir.1998) and *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir.1990):

> The present case ... involves non-class claims of a single plaintiff against five defendants. Empire is advancing its own subrogated interests... [F]idelity to the equitable principles underlying New York's doctrine of subrogation in this instance permits the use of statistical proof rather than compelling individ-

ualized showings as to hundreds of thousands of claims.

113 F.Supp.2d at 376–79. Empire brings to this court a claim that depends on damage to a portion of its population of subscribers. It proposes to introduce reliable statistical models and related expert testimony to prove that a population proportion and the damage caused by that proportion to itself, Empire. In addition, the parties have taken depositions from, and can present evidence with respect to, more than 150 smokers randomly chosen for depositions from among Empire's clients. This individualized evidence may constitute confirming proof of Empire's state law claims. Defendants will have the opportunity to test the credibility of this evidence in relation to the specific elements of reliance, causation, and injury before the jury.

### b. Right of Party Injured But Not Deceived

The private right of action under sections 349 and 350 was drawn broadly to enhance enforcement against consumer fraud. *See* 1980 McKinney's Session Laws 1867 (memorandum of Gov. Carey); 1980 New York State Legislative Annual 146 (memorandum of Assemblyman Strelzin). In addition to consumers, others institutions—even competitors—are given the right to sue by sections 349(h) and 350–d. *See Sulner v. General Accident Fire & Life Insurance Co.*, 122 Misc.2d 597, 471 N.Y.S.2d 794 (N.Y.Sup.1984) ("In supporting passage of the legislation, the Attorney General took the time to underscore its application"... "a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection.") (citing *Memorandum of Attorney General* (contained in Bill Jacket for ch. 346 of 1980 N.Y.Laws)). In light of the Act's importance in protecting against fraud, it is unreasonable to suggest that New York would deny the courts or private litigants the use of modern statistical forms of proof in enforcing the law. *See, e.g., Walker v. National*

*Recovery Inc.*, 200 F.3d 500 (7th Cir.1999) (court cannot simply assume subjective effect of defendant's conduct on class, but may depend on experts and survey evidence to establish class members were mislead under the Fair Debt Collection Practices Act); *Cf. Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn.2001).

There is considerable merit in Professor Margaret A. Berger's suggestion that traditional general causation proof is so difficult in toxic tort cases that it should not be required, but that alternative elements of the cause of action should suffice. Margaret A. Berger, *Eliminating General Causation: Notes Toward a New Theory of Justice and Toxic Torts*, 97 Colum. L.Rev. 2117 (1997). In the instant case availability of far reaching internal data from the files of the tobacco industry and extensive epidemiological information provide sufficient evidence to support a classic general causation cause of action against a motion for summary judgment. Here it is the method of proof—statistical analysis linked with the usual forms of evidence—rather than truncated elements of the state cause of action that suffices to safeguard what Professor Berger characterizes as "notions of moral responsibility underlying tort law." *Id.* at 2117.

### V Regulatory Compliance under New York Consumer Protection Act

Defendants claim that their compliance with the detailed federal laws and regulations governing the industry is a complete defense to plaintiff's consumer protection claims under sections 349 and 350. *See* New York General Business Law §§ 349(d), 350–c. Defendants contend they are supervised by a panoply of government regulations such as statutorily proscribed health warnings, advertising limitations, research demands on Health and Human Services to report to Congress regarding tobacco addiction research, Federal Trade Commission reports, and requirements to report lists of cigarette in-

gredients. The defendants highlight the Federal Trade Commission regulations on cigarette advertising. According to defendants, between 1955 and 1970, and since, the Federal Trade Commission continually regulated tobacco industry "health claims" made in cigarette advertising. They claim that their compliance with federal law and regulations is a complete defense under the Act.

### A. Law

■ State law that conflicts with federal law is without effect. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)).

The New York Consumer Protection Act also has a specific exclusion for acts that are subject to, and in compliance with, federal rules, regulations, or statutes. Section 349(d) of the Act provides:

In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any other official department, division, commission or agency of the United States as such rules, regulations and statutes are interpreted by the federal trade commission, or such department, divi-

sion, commission or agency or the federal courts.

New York General Business Law § 349(d)(McKinney 1994). Section 350–c similarly provides:

In any action it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division, commission or agency of the state of New York.

New York General Business Law § 350–c (McKinney 1994); *see also Morelli v. Weider Nutrition Group, Inc.*, 275 A.D.2d 607, 712 N.Y.S.2d 551 (N.Y.App.Div.2000) (excluding practices subject to and in "compliance with Federal rules, regulations, or statutes").

Compliance with regulations does not immunize misconduct outside the regulatory scope. *Compare Small v. Lorillard Tobacco Co.*, 176 Misc.2d 413, 672 N.Y.S.2d 601, 609 n. 3 (1997), *rev'd on other grounds*, 252 A.D.2d 1, 679 N.Y.S.2d 593 (N.Y.App.Div.1998) ("[w]hile defendants argue that ... the GBL provides a complete defense to one who complies with the rules of a federal statute, in this case the Labeling Act untruthful utterances ... are never entitled to such protection.") *and Demarco v. Bay Ridge Car World, Ltd.*, 169 A.D.2d 808, 565 N.Y.S.2d 176, 177 (N.Y.App.Div.1991) (recall notice made pursuant to federal law not a defense to General Business Law section 349 claim for failure to disclose automobile's susceptibility to engine fires) *with Porr v. NYNEX Corp.*, 230 A.D.2d 564, 660 N.Y.S.2d 440 (N.Y.App.Div.1997) (defendant's practice of rounding off point barred when that would have directly contradicted federal regulation which permitted the practice); *Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1173 (S.D.N.Y.1996) (barring section 349 claim when AT & T had specifically complied with related rules under Communications Act). *Cf. American Law Institute, 2 Reporter's Study on Enter-*

prise *Responsibility For Personal Injury* 83–110 (1991) (recommending compliance preclusion for those risks that specifically have been addressed and regulated by the administrative program).

### B. Application

While New York statutory fraud does provide an independent regulatory compliance defense, that defense does not extend to acts that are not related to the regulated conduct. *Small v. Lorillard Tobacco Co.*, 176 Misc.2d 413, 672 N.Y.S.2d 601, 609 n. 3 (N.Y.Sup.Ct.1997), *rev'd on other grounds*, 252 A.D.2d 1, 679 N.Y.S.2d 593 (N.Y.App.Div.1998). The cases relied upon by defendants suggest that only when a state regulation directly contradicts the scope of New York's General Business Law will it be preempted. *See, e.g., Porr v. NYNEX Corp.*, 230 A.D.2d 564, 660 N.Y.S.2d 440 (N.Y.App.Div.1997); *Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1173 (S.D.N.Y.1996). In the case of regulatory programs designed to set a minimum standard there is in principle no difficulty in allowing tort liability to play a supplemental role in addressing those risks that remain after the minimum standard has been satisfied. *See generally* Robert L. Rabin, *Reassessing Regulatory Compliance*, 88 Geo. L.J.2049, 2084 (2000). No case holds that when intentional deception is alleged, unrelated regulatory supervision immunizes.

Here, the plaintiffs do not predicate their claims on a duty or failure to warn, but upon a duty not to deceive or make false statements. *See Falise v. American Tobacco Co.*, 94 F.Supp.2d 316, 356–57 (2000). Regulatory compliance with federal agencies does not warrant a blanket protection from such claims under the New York state statute.

### VI. Subrogation and Punitive Damages

Defendants contend that New York common law bars subrogees from seeking punitive damages. Although they concede that there appears to be no existing New York authority on the precise issue, they argue that the general rule adopted outside New York is that subrogation awards are limited to amounts insurers have paid under an insurance policy. Because New York decisions have held that the general purpose of subrogation is to reimburse the subrogee, defendants argue that punitive damages would result in a windfall to the plaintiff. For the reasons stated below, Empire may proceed with its punitive damage claim.

### A. Law

The general principle limiting subrogation recoveries in one-on-one actions is that "a subrogee is entitled to indemnity to the extent only of the money paid by him to discharge the obligation." 73 Am.Jur.2d *Subrogation* § 115 (1974); *see also, e.g., Utica Mut. Ins. v. Denwat Corp.*, 778 F.Supp. 592 (D.Conn.1991). New York decisions follow the general rule that the purpose of subrogation is to reimburse. *See Home Title Guar. Co. v. Carey*, 144 N.Y.S.2d 116 (N.Y.Sup.1955); *Ocean Accident & Guar. Corp. v. Hooker Electrochemical Co.*, 240 N.Y. 37, 147 N.E. 351 (1925). Under New York law, however, the subrogee also "acquires by subrogation all of the rights possessed by the original holder in respect of the claim it has been compelled to pay." *Ocean Accident & Guar. Corp. v. Hooker Electrochemical Co.*, 240 N.Y. 37, 147 N.E. 351, 355 (1925); *Blue Cross v. Philip Morris Inc.*, 113 F.Supp.2d at 377 (at the time of paying an insured's loss, "the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and the insurer succeeds to *all procedural rights and remedies* possessed by the insured;" permitting trebling of damages under RICO) (emphasis added).

Principles supporting punitive damage actions must be evaluated in light of an alleged massive fraud, huge numbers of claims, and extraordinarily high damages. Punitive damages serve the purpose of

providing compensation to society where—as here—many individual claims cannot as a practical matter be brought. Chief Judge Stanley Fuld's words in the leading case of *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961), are instructive:

> [T]he possibility of an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer. Indeed, such self-interest of the plaintiff has been characterized as perhaps the principal advantage of sanctioning punitive damages, where the same motive would often lead him to refrain from the trouble incident to appearing against the wrongdoer in criminal proceedings.

10 N.Y.2d at 404; *see also, e.g.*, David Luban, *A Flawed Case Against Punitive Damages*, 87 Geo. L.J. 359, 366 (1998) ("One way to enforce environmental and safety law is through centralized public agencies—the regulators and the police. A second way is through private causes of action brought by private parties."); A. Mitchell Polinsky & Steven Shavel, *Punitive Damages: An Economic Analysis,*. 111 Harv. L.Rev. 869, 874 (1998) ("[P]unitive damages ordinarily should be awarded, if, and only if, an injurer has a chance of escaping liaibilty for the harm he causes").

Standard case-by-case adjudication of mass tort claims not only may deny litigation efficiencies to plaintiffs, but may afford large litigation advantages to defendants. *See generally* David Rosenberg, *Mass Tort Class Actions: What Defendants Have and Plaintiffs Don't*, 37 Harv. J. Legis. 393, 395 (2000) (defendants generally litigate mass tort issues from the posture of a de facto class action). Aggregation of claims in a mass equitable subrogation action like the case at bar may restore balance in litigation power ensuring one of the primary goals of tort law, effective and administratively efficient de-

terrence and compensation. David Rosenberg, *Individual Justice and Collectivizing Risk–Based Claims In Mass Exposure Cases*, 71 N.Y.U. L.Rev. 210, 219 (1996) (calling for consideration of aggregation in mass exposure cases from the perspective of the deterrence and compensation policies underlying tort law); *cf.* Kenneth Abraham, *Individual Action and Collective Responsibility: The Dilemma of Mass Tort Reform*, 73 Va.L.Rev. 845, 896–97 (1987) (proposing a compensation fund with quasi-subrogation rights of punitive damages against a tortfeasor).

Cases cited by the defendants, do not speak to the issue now posed. They all involve single subrogation claims, and thus do not squarely balance the general societal interest in enforcing punitive damages where many individual claims would not be brought or would not be fully vindicated to cover the total cost of a defendant's delicts to society. *See, e.g., Prudential Prop. & Cas. Co. v. Dow Chevrolet–Olds, Inc.*, 10 S.W.3d 97 (Tex.App.1999) (holding that insurer, as subrogee on single claim, was not entitled to receive punitive damages); *Utica Mut. Ins. Co. v. Denwat Corp.*, 778 F.Supp. 592 (D.Conn.1991) (same); *Employers Ins. of Wausau v. Dunaway,* 626 F.Supp. 1144 (S.D.Miss.1986) (same); *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360 (Ind.Ct.App.1982) (same); *Colonial Penn Ins. Co. v. Ford*, 172 N.J.Super. 242, 411 A.2d 736 (N.J.Super.L.1979) (same); *Maryland Cas. Co. v. Brown*, 321 F.Supp. 309 (N.D.Ga.1971) (same).

*Utica Mut. Ins. v. Denwat Corp.*, 778 F.Supp. 592 (D.Conn.1991), heavily relied upon by the defendants is illustrative. There the court never fully addressed the broader societal interest in deterrence and full payment of the social costs of the defendant's acts to the community in punitive damages:

> Connecticut in theory recognizes the doctrine of "punitive damages," but in practice the courts have consistently rejected the notion of "punishing" the de-

fendant and grant such damages merely as compensation for plaintiff's actual injuries and losses.

778 F.Supp. at 593 (citing *Doroszka v. Lavine*, 111 Conn. 575, 578, 150 A. 692 (1930)).

The policy interests in enforcing punitive damages in connection with a massive delict affecting large numbers of people have not been considered in any of the garden variety subrogation cases relied upon by defendants. *Cf. Rental & Management Associates, Inc. v. Hartford Ins. Co.*, 155 Misc.2d 547, 548, 588 N.Y.S.2d 982 (N.Y.Sup.Ct.1992), aff'd, 206 A.D.2d 288, 614 N.Y.S.2d 513 (N.Y.App.Div.1994)("Punitive damages of course are imposed for morally culpable or evilly motivated conduct with purpose being to punish the individual wrongdoer and to deter others."); *see also Prosser and Keeton on the Law of Torts* (4th ed.) § 2, 9 (1994) ("[T]he corporate manufacturer of a product who exposes its users and others to serious injuries because of its reckless disregard of their safety may escape criminal punishment. In essence, then, those who favor the concept of punitive damages in civil law are arguing that the doctrine serves to fill gaps in the criminal law by punishing conduct which, although it deserves punishment, is not being punished through the criminal law."). Defendants have not raised the point that, in a sense the class action or quasi-class action such as the present one, where many claims are aggregated, takes care of the problem of social payment for the full cost of damages a defendant caused. Whether the punitive damages would "overpay" social costs or would be justified as punishment for extra defendant value may be left for an answer on a later day.

### B. Application

Allowing Empire to proceed with punitive damages under a New York common law fraud theory comports with equitable principles in addition to basic tort objectives. To prohibit punitive damages in cases of a mass subrogation case such as the present one—where it is otherwise permitted as a matter of New York state common law as a remedy for the underlying cause-of-action—would have the effect of unjustly enriching the injuring party. See *Teichman v. Community Hospital of Western Suffolk*, 87 N.Y.2d 514, 521, 640 N.Y.S.2d 472, 663 N.E.2d 628 (1996) (equitable subrogation "formulated to prevent unjust enrichment"). If such a rule were adopted, the injuring party might avoid much of the damages for which it is responsible merely because the amount of losses in question had been covered by a third party. To the extent that the present action serves as a way of combining suits to overcome high transaction costs, there is no reason a massive subrogation action should not be used to assess punitive damages for sanctionable conduct any less then would a pure class action. In seeking to strip Empire of the ability to seek punitive damages in this context, defendants would impose a rule that conflicts with basic notions of equity underlying New York subrogation and punitive damage law.

Permitting Empire to proceed on its punitive damages claim in equitable subrogation is consistent—so far as can be determined at this early stage of the proceedings—with the basic societal purposes that are served by the imposition of punitive damages. In this action, Empire in a sense is acting as a kind of private Attorney General for many individuals. *See* Howard M. Erichson, *Coattail Class Actions: Reflections On Microsoft, Tobacco, and the Mixing of Public and Private Lawyering in Mass Litigation*, 34 U.C. Davis L.Rev. 1, 2 (2000) ("Properly managed, such class actions offer a relatively fair and efficient mechanism for extending the benefits of government legal work to provide redress to injured citizens"). Since the plaintiff is the major protector of those with medical problems in this state, fulfilling a quasi-governmental role protecting the public, policy goals support providing it with the full panoply of devices necessary to serve the public good, including the right to punitive damages.

## VII. Remoteness of State Law Claims

Finally, defendants maintain that state-law claims must be dismissed because Empire's injuries are too remote to satisfy the requirements of proximate cause. This defense has been repeatedly rejected. *See Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris Inc.*, 36 F.Supp.2d 560 (E.D.N.Y.1999) (denying defendant's motion to dismiss on remoteness grounds); *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F.Supp.2d 221 (E.D.N.Y.1999) (denying defendants' motion for reconsideration of denial of motion to dismiss); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris Inc.*, 113 F.Supp.2d 345 (E.D.N.Y.2000) (denying summary judgment on remoteness grounds); *see also Falise v. American Tobacco Co.*, 94 F.Supp.2d 316 (E.D.N.Y. 2000) (same). For reasons stated in prior decisions, these claims are not too remote. Summary judgment on this ground is denied.

## VIII. Conclusion

Defendants' motion for summary judgment is denied.

SO ORDERED